UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------->

NINA KING and BRIANNA ALVAREZ, individually and on behalf of all other similarly situated,

Plaintiffs,

-against-

WHITE HOUSE BLACK MARKET, INC.,

Defendant.

Case No. 22-cv-3385(JGK)

----------------------------------------------------------------->

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Jackson Lewis P.C.
Attorneys for Defendant
666 Third Ave, Suite 29
New York, New York 10017
*Adam S. Gross*

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................................1

Argument ...................................................................................................................5

Point One: There Is No Express Private Right of Action for Violations of NYLL §191...........5

I.   The text of NYLL §191 does not provide for a private right of action for errors
     relating to the frequency in which payroll is processed......................................................6

II.  The text of NYLL §198 also does not provide for a private right of action for errors
     relating to the frequency in which payroll is processed......................................................6

     A.   NYLL §198 provides a private right of action for an unpaid "wage claim,"
          but an error regarding the frequency in which payroll is processed is not a
          "wage claim"...............................................................................................6

     B.   The structure of the NYLL, including, NYLL §218 (the administrative
          penalties provision for NYLL violations) establishes that a frequency of
          pay violation is not a "wage claim," subject to private lawsuits, but rather
          a "non-wage" violation subject to civil penalties imposed by the DOL......................8

          1.   NYLL §218 establishes two categories of violations—wage claims
               and non-wage claims ........................................................................9

          2.   DOL guidance, enforcement actions, and IBA decisions show an error
               regarding the frequency in which payroll is processed is not a wage
               claim, but a non-wage claim.................................................................10

     C.   The statutory and legislative history further confirm a violation of NYLL
          §191 is not a "wage claim" under NYLL §198 ...........................................13

          1.   Statutory and legislative history of NYLL §191 show there is no private
               right of action for errors relating to the frequency in which payroll is
               processed ......................................................................................14

          2.   Statutory and legislative history of NYLL §198 establish that §198 was
               enacted to provide a statutory claim for wage claims (*i.e.*, claim for unpaid
               wages or underpaid wages), and not to provide a cause of action for errors
               relating to the frequency in which payroll is processed, a non-wage claim............17

          3.   The 2021 "No Wage Theft Loophole Act," clarifies that both NYLL
               §198 and §193 provide the substantive right to collect unpaid wages, not §191,
               further establishing §191 provides no private right of action for frequency
               errors ..........................................................................................21

D.   Conclusion: There is no express right of action under the Labor Law for errors in frequency in which payroll is processed .........................................25

Point Two: The Court Should Not Recognize an Implied Private Right of Action for Violations of the Pay Frequency Requirements of NYLL §191 ...........................25

I.   Under *Konkur*, the Court cannot create an implied cause of action under Article 6 because the Legislature has already created a comprehensive enforcement mechanism for enforcing violations of the Weekly Pay Law under Article 6. Doing so would also violate separation of powers.........................................................................25

II.  This Court should not follow *Vega* because it conflicts with *Konkur* and for at least seven other reasons.............................................................................................29

Point Three: If the Court Finds a Private Right of Action Exists, the Court Should Make Clear That Damages are Limited to Lost Interest and Not Liquidated Damages in an Amount Equal to the Wages Already Paid.....................................36

Conclusion ..................................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. Morgan's Hotel Grp., Mgmt., LLC*,
  160 A.D.3d 555 (1st Dep't 2018) ....................................................................30, 31

*Arciello v. Cty of Nassau*,
  2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. 2019) ..................................................35

*Barenboim v. Starbucks Corp.*,
  21 N.Y.3d 460 (2013) ............................................................................................13

*Belizaire v. RAV Investigative and Sec. Servs. Ltd.*,
  61 F. Supp.3d 336 (S.D.N.Y. 2014) ......................................................................35

*Calle v. Yoneles Enters., Inc.*,
  2017 U.S. Dist. LEXIS 178724 (E.D.N.Y. Oct. 24, 2017) ....................................22

*Carrera v. DT Hospitality Grp.*,
  2021 U.S. Dist. LEXIS 210894 (S.D.N.Y. Nov. 1, 2021) ......................................35

*Caul v. Petco Animal Supplies, Inc.*,
  2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021) ...................................35

*Cavalotti v. Daddyo's BBQ, Inc.*,
  2018 U.S. Dist. LEXIS 154918 (E.D.N.Y. Sep. 8, 2018) ......................................24

*Chan v. Big Geyser, Inc.*,
  2018 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 30, 2018) ....................................20

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
  2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 27, 2018) ...............................23, 35

*Coley v Vannguard Urban Improvement Assn.*,
  2018 U.S. Dist. LEXIS 54609 (E.D.N.Y. Mar. 29, 2018) ......................................35

*Cruz v. TD Bank, N.A.*,
  22 N.Y.3d 61 (2013) .................................................................................26, 28, 37

*De Los Santos v. Hat Trick Pizza, Inc. (In re Domino's Pizza Inc.)*,
  2018 U.S. Dist. LEXIS 51393 (S.D.N.Y. Mar. 27, 2018) ......................................20

*Gardner v. D&D Elec. Constr. Co., Inc.*,
  2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y. Cty. Aug. 7, 2019) .........................35

*Gertler v. Davidoff Hutcher & Citron,*
　　LLP, 186 A.D.3d 801 (2d Dep't 2020)................................................................22

*Gillespie v St. Regis Residence Club, NY Inc.,*
　　461 F. Supp 3d 96 (S.D.N.Y. 2020)..................................................................30

*Gottlieb v. Kenneth D. Laub & Co.,*
　　82 N.Y.2d 457 (1993) ..............................................................................*passim*

*Grant v. Global Aircraft,*
　　2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty., April 20, 2021) ....................2, 34

*Haar v Nationwide Mut. Fire Ins. Co.,*
　　918 F.3d 231 (2d Cir 2019)............................................................................30

*Hunter v. Planned Bldg. Servs., Inc.,*
　　2018 N.Y. Misc. LEXIS 2896 (Sup. Ct. Queens Cty. June 11, 2018)..................................34

*Hussain v. Pak. Int'l Airlines Corp.,*
　　2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012) ..........................................34

*IKEA U.S. v. Indus. Bd. of Appeals,*
　　241 A.D.2d 454 (2d Dep't 1997)........................................................................10

*Kam Shing Chan v City of NY,*
　　1 F3d 96 (2d Cir. 1993)................................................................................29

*Kone v. Joy Constr. Corp.,*
　　2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016) ............................................20

*Konkur v Utica Academy of Science Charter Sch.,*
　　38 NY3d 38 (2022) ....................................................................................*passim*

*Mabe v. Wal-Mart,*
　　2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022)..........................................2, 33, 34

*Mears v. Chrysler Fin. Corp.,*
　　243 A.D.2d 270, 663 N.Y.S.2d 22 (1st Dep't 1997) ..............................................34

*Michalski v. Home Depot, Inc.,*
　　225 F.3d 113 (2d Cir. 2000)........................................................................29, 30

*Negrin v. Norwest. Mortg., Inc.,*
　　263 A.D. 2d 39 (2d Dep't 1999)......................................................................5

*Nicholson v. Alliance Nursing Staffing,*
　　2019 N.Y. Misc. LEXIS 22473 (Sup. Ct., Bronx Cty. Apr. 30, 2019)..................................35

*Ortiz v. Ciox Health LLC*,
  37 N.Y.3d 353 (2021) ................................................................................26, 27, 28

*Pachter v. Bernard Hodes Group, Inc.*,
  10 N.Y.3d 609 (2008) .......................................................................................23, 32

*People v. City of Buffalo*,
  11 N.Y.S. 314 (5th Dep't 1890).............................................................................14

*People v. Finley*,
  10 N.Y. 3d 647 (2008) ...........................................................................................7

*People v. Garcia*,
  21 Misc. 3d 732 870 N.Y.S. 2d 851,855 (Sup. Ct. Bronx Cty, 2008) ....................34

*People v. Vetri*,
  309 N.Y. 401 (1955) ...............................................................................................27

*Quallen v. Impendi Analytics*, LLC,
  2021 N.Y. Misc. LEXIS 6733 (Sup. Ct. N.Y. Cty. Dec. 21, 2021).........................22

*Quintanilla v. Kabo Pharmaceuticals, Inc.*,
  Case No. 19-06752.................................................................................................35

*Reddington v. Staten Island Univ. Hosp.*,
  511 F.3d 126 (2d Cir. 2007)...................................................................................30

*Rodrigue v. Lowe's Home Ctrs., LLC*,
  2021 U.S Dist. LEXIS 162849 (E.D.N.Y. Aug. 27, 2021)......................................35

*Ryan v. Kellogg Partners Inst. Servs.*,
  19 N.Y. 3d 1 (2012) ..................................................................................22, 23, 24, 32

*Salama v. Blink Holdings Inc.*,
  Index No. 608514/2018 (Sup. Ct. Suffolk Cty. May 15, 2020)................................4

*Santillan v. Henao*,
  822 F. Supp. 2d 284 (E.D.N.Y. 2011) ..................................................................23

*Saratoga County Chamber of Commerce v. Pataki*,
  100 N.Y. 2d 801 (2003) .........................................................................................29

*Sheehy v. Big Flats Community Day, Inc.*,
  73 N.Y.2d 629 (1989) ........................................................................................27, 28

*Sorto v. Diversity Maint. Sys.*,
  2020 U.S. Dist. LEXIS 216328 (E.D.N.Y. Nov. 15, 2020)...................................35

vi

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204, 831 N.Y.S.2d 760 (2007) .................................................................4

*People ex rel. Van Valkenburg v. Myers*,
    33 N.Y. St. Rep. 18, 11 N.Y.S. 217, 25 Abb. N. Cas. 368 (Sup. Ct., N.Y. Cty.
    1890) (referring to L. 1890, ch. 388 as the "Weekly Payment Law")....................14

*Vega v. CM & Assoc. Constr. Mgt., LLC*,
    175 A.D.3d 1144 (1st Dep't 2019) ............................................................... *passim*

*Vega v. CM & Assocs. Constr. Mgmt.*,
    2018 N.Y. App. Div............................................................................................32

*Zivkovic v Laura Christy, LLC*,
    2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022)................................30, 31

**Statutes**

Fed. R. Civ. P. 12(b)(6)......................................................................................1

New York Labor Law § 191 .................................................................... *passim*

New York Labor Law § 198 .................................................................... *passim*

New York Labor Law § 218 .................................................................... *passim*

**Industrial Board of Appeals Decisions**

*Century Diner Buffet, Inc*., PR 12-180 (Indus. Bd. of Appeals, July 13, 2016) ..........................12

*Hudson Valley Mall Dental, PR* 12-034, at p. 1 (Indus. Bd. of Appeals Aug. 7
    2014) ...............................................................................................................12, 26

*Ram Hotels, Inc*., PR 08-078 at p.2 (Indus. Bd. of Appeals Oct. 11, 2011) ...........121*Ribble (d/b/a
    Perfecto Cleaners)*, PR NO. 06-038, 039 (Indus. Bd. of Appeals, Dec. 19,
    2007) .......................................................................................................................12

*RJS Janitorial, LLC*, PR 15-148 (Indus. Bd. of Appeals, Oct. 24, 2018).....................................12

## PRELIMINARY STATEMENT

Plaintiffs, Nina King and Brianna Alvarez, were employed as an Assistant Store Manager and Sales Lead, respectively, by White House Black Market, Inc. ("White House" or "Defendant") [Amd. Complaint ¶¶ 11-12].[1]  In the Amended Complaint, Plaintiffs do not allege that they are owed any wages.  They were paid every penny they earned during their respective periods of employment.  Thus, this is not a case about unpaid or underpaid wages or minimum wage violations or unpaid overtime.  Instead, Plaintiffs claim only that White House violated New York Labor Law ("NYLL") §191 by paying them and other alleged "manual workers" on a bi-weekly, rather than weekly basis, and because their alleged payroll processing error resulted in one week of their bi-weekly pay being paid more than seven days after it was due, they claim that they, and the class they seek to represent, are entitled to "liquidated damages" equal to the full wages they were *already* paid (which is millions of dollars), interest, attorneys' fees, and costs. [*Id.* at ¶¶ 6, 2].

Defendant now moves to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted for a simple reason: there is no *private* right of action for violations of the New York weekly payment law.  Rather, the Labor Law expressly provides only for *public* enforcement of the weekly payment law and expressly grants the right to enforce the weekly payment law solely to the New York State Department of Labor ("DOL"). Under the law, the DOL can issue penalties in the amount of up to $1,000 for the first violation, up to $2,000 for the second violation, and up to $3,000 for the third violation, not business-ending liquidated damages, untethered to any actual harm that Plaintiffs seek here.

---

[1]The original Complaint was filed on April 26, 2022.  [DKT No. 1].  On June 29, 2022, Defendant filed a request for a pre-motion conference. The Court held a pre-motion conference on July 7, 2022, giving plaintiff until July 15, 2022 to file an Amended Complaint and setting forth a briefing schedule for this motion.  [DKT No. 9].

The weekly payment law was enacted in 1890. And for nearly 130 years no one brought a private lawsuit for violations of the statute because it was understood that the law did not provide that remedy.  But in *Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019), the First Department, in a terse seven-paragraph opinion (and likely unaware of the consequences it would unleash), held a private right of action exists, either expressly or by implication, ignoring the history and the text of the statute.

*Vega* was wrong.[2]  It failed to properly analyze the text of NYLL §191 and §198; failed to consider the structure of the Labor Law as a whole, including NYLL §218; failed to examine how the statute is enforced by the DOL and Industrial Board of Appeals (IBA) (which classifies such violations as a *non-wage* claim subject to civil penalties, not a *wage*-claim subject to liquidated damages); and failed to review the relevant statutory and legislative history, all of which confirm no express or implied private of action exists, nor was one ever intended by the Legislature.

*Vega* opened the floodgates.  Since *Vega*, more than 150 lawsuits have been filed alleging violations of the weekly payment law.  Your Honor has at least two other cases pending that assert the exact same claim. The damages they seek for technical violations are staggering—the full amount of the wages that were allegedly paid late.

Here's an example:

---

[2] In *Grant v. Global Aircraft,* 2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty., April 20, 2021), the court refused to follow *Vega* and found no private right of action exists. Plaintiff appealed to the Second Department, and the case is fully briefed.  *See* Case No. 2021-03202.  Thus, another Appellate Division will soon weigh in.  In *Mabe v. Wal-Mart*, 2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022), the court deferred to *Vega*, but a motion for an interlocutory appeal to the Second Circuit is currently pending. Case No. 20-00591, Dkt. Nos. 40-41(N.D.N.Y. Apr. 4, 2022).  Thus, the Second Circuit may also weigh in soon or certify the question to the New York Court of Appeals.  In *Mabe,* an amicus brief was filed in support of the request for an interlocutory appeal by organizations by the U.S. Chamber of Commerce, the Retail Litigation Center, the National Federation of Independent Businesses, the Business Council of New York State, the New York State Restaurant Association, and the Business Council of Westchester representing employers of nearly every size and shape.  *See* DKT No. 49-1 (April 28, 2022).  Amicus briefs have also been filed in *Grant* at the Second Department by the same organizations (in favor of the lower court's holding no private right exists).  Copies of the amicus briefs are attached to the Declaration of Adam S. Gross, Esq. dated August 5, 2022 ("Gross Dec.") as Exhibits 27 and 28.

Suppose a small company employing "manual workers" has 25 workers all earning $825.00 per week ($42,900 per year).  Assume every employee received every dollar they were promised, including overtime at 1.5 times their hourly rate, without fail, on their scheduled payday.  But assume those scheduled paydays were every *two* weeks, not every week, because the employer, like thousands of other employers, uses a bi-weekly payroll. And assume the employer *should have* processed payroll on a weekly basis instead.

According to Plaintiffs, because the employees were paid bi-weekly, instead of weekly, one week of pay in every pay period was paid "late," and thus the employer owes one full week of pay ($825.00) in liquidated damages for *every pay period* during the six-year statute of limitation.  For a single employee, the penalty would total $128,700.  For all 25 employees, the penalty would be a business-ending $3,217,500.  For larger employers, the damages grow absurdly to astronomical amounts.  A *single employer* with 5,000 employees, for example, would owe $643,500,000, and one with 10,000 employees $1.286 billion dollars.

What extreme desecration of the law would justify such draconian damages, putting nearly every employer out of business?  According to Plaintiffs, a payroll processing error resulting in bi-weekly pay instead of weekly pay.  This is not the law, and *Vega* was wrong.

As we discuss in the analysis below, there is no private right of action for violations of NYLL §191 for the following reasons:

- Neither the text of NYLL §191 nor that of §198 provides an express private right of action for errors regarding the frequency in which payroll is processed;

- The structure of the Labor Law establishes that the Legislature gave the DOL, not private parties, the authority to enforce "non-wage" claims such as frequency of pay violations and to use its discretion in determining the appropriate amount of penalties under NYLL §218;

- The DOL's enforcement actions, its publicly available guidance, and IBA decisions (which review DOL enforcement actions) confirm that frequency of pay violations are "non-wage" claims subject to DOL enforcement, not private lawsuits;

- The statutory and legislative history show that an error regarding frequency of processing payroll is not subject to private lawsuits, but rather DOL enforcement; and

- Without an express private right of action provided by the Legislature and given the enforcement mechanisms already chosen by the Legislature, it would be improper (and contrary to the recent Court of Appeals decision in *Konkur v Utica Academy of Science Charter Sch*., 38 NY3d 38 (2022), decided after *Vega*) to create an implied private right of action.

Because *Vega* is the only Appellate Division case addressing the issue, lower state courts (and federal courts) have followed it, some with little or no analysis, and others begrudgingly. Notably, most frequency of pay cases, like this one, are now filed in federal court, not state court, relying on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332 as the basis for federal subject matter jurisdiction. Why? For the specific purpose of *avoiding* state appellate court review and because by filing the case in federal court, plaintiffs avoid the application of CPLR §901(b), which prohibits bringing class actions seeking the very penalties Plaintiffs seek here. *Sperry v. Crompton Corp*., 8 N.Y.3d 204, 211, 831 N.Y.S.2d 760, 763 (2007); *Salama v. Blink Holdings Inc*., Index No. 608514/2018 (Sup. Ct. Suffolk Cty. May 15, 2020) (liquidated damages under the NYLL are not available in class actions pursuant to CPLR 901(b) under NY law because they are penalties). Thus, a state class claim that would fail if brought in state court is magically resurrected as a potent weapon in federal court using CAFA.

4

The Legislature never intended choosing the wrong payroll frequency to be a business-ending decision.  It never intended for employees (and their attorneys) to recover a windfall because they were paid bi-weekly, not weekly.  This is not to say there are no consequences for violating NYLL §191's weekly pay requirements.  There are—the law does not confer a statutory right without a remedy.  Under the statute, an employer pays employees at the wrong frequency of pay (*e.g.,* bi-weekly instead of weekly) is subject to administrative enforcement and remedies under NYLL §218.  The Commissioner of Labor has the ability, for example, to issue a fine for up to $1,000 for the first violation; $2,000 for the second violation, and $3,000 for the third or subsequent violation.  NYLL §218(1).  But in assessing the amount of the penalty, the Legislature requires the DOL to consider "the size of the employer's business, the good faith basis of the employer to believe that its conduct was in compliance with the law, the gravity of the violation, the history of previous violations . . . ." NYLL §218(1).  In other words, the Legislature vested in the DOL discretion to ensure that the penalty is proportional to the violation.  Creating a private right of action with business-ending damages (as *Vega* did) is inconsistent with the enforcement mechanism chosen by the Legislature.

## ARGUMENT

### POINT ONE

### There Is No Express Private Right of Action for Violations of NYLL §191

"Not every violation of a statutory provision is actionable by an individual aggrieved by its breach.  Rather, there must be either an express or implied private right of action conferred upon aggrieved parties."  *Negrin v. Norwest. Mortg., Inc.*, 263 A.D. 2d 39, 46 (2d Dep't 1999) (citing *Carrier v. Salvation Army*, 88 N.Y.2d 298, 303 (1996)).  Here, there is neither.

## I.     The text of NYLL §191 does not provide for a private right of action for errors relating to the frequency in which payroll is processed.

NYLL §191, entitled "Frequency of Payments," establishes how often employers must process payroll for various classes of workers.  As relevant here, an employer is required to process payroll weekly for a "manual worker";[3] at least monthly for a "commission salesperson"; at least semi-monthly for a "clerical and other worker"; and on or before Thursday of each week for a "railroad worker."  NYLL §191(1)(a)(i).[4]  NYLL §191 does not, however, authorize an employee to bring a *private* cause of action when an employer selects the wrong frequency of pay (*e.g.*, pays bi-weekly instead of weekly).  It does not refer to damages or civil actions, and thus provides no express right.

## II.    The text of NYLL §198 also does not provide for a private right of action for errors relating to the frequency in which payroll is processed

Because the text of NYLL §191 does not itself provide a private right of action, Plaintiffs will instead rely on NYLL §198 as the basis for their claim.  (Amd. Complaint ¶ 23) (citing NYLL §198).  But NYLL §198 similarly does not provide a private right of action for an error regarding the frequency in which payroll is processed under NYLL §191.

### A.     NYLL §198 provides a private right of action for an unpaid "wage claim," but an error regarding the frequency in which payroll is processed is not a "wage claim"

The analysis begins with the plain meaning of the statute, presuming, in the absence of evidence otherwise, that lawmakers have used words as they are commonly or ordinarily

---

[3] A "manual worker" is defined as a "a mechanic, workingman or laborer."  NYLL §190(4). Defendant denies that Plaintiffs or the class they seek to represent are "manual workers" as defined by the statute.

[4] The law permits the Commissioner of Labor to make exceptions upon application for a waiver of the weekly pay requirement. For example, it permits an employer with an average of 1,000 or more employees in New York for three years to pay manual workers semi-monthly. NYLL §191(1)(a)(ii).  Thus, the Labor Law does not make weekly pay sacrosanct; it allows waivers and exceptions—indeed, exempting larger employers makes the small and mid-size employers at heightened risk for similar class action lawsuits like that filed here.

employed.  *People v. Finley*, 10 N.Y. 3d 647, 654 (2008).  The plain language of NYLL §198 confirms that payroll processing errors are not "wage claims."  NYLL §198(1-a) provides, in pertinent part:

> In any action instituted in the courts upon a *wage claim* by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any *underpayment*, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its *underpayment* of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the *wages found to be due*, except such liquidated damages may be up to three hundred percent of the total amount of the *wages found to be due* for a willful violation of section one hundred ninety-four of this article.  (NYLL §198(1-a))(emphasis added).

The remaining sections of NYLL §198 identify other violations that *can* be enforced through private civil actions: Section §198(1-b), for example, provides an express private right of action for failing to provide employees with a wage notification form upon hire as required by NYLL §195(1); and Section 198(1-d) provides an express private right of action for failing to provide compliant wage statements (pay stubs) as required by NYLL § 195(3).

Thus, NYLL §198 establishes a private right of action for: (1) unpaid "wage claim[s]" and (2) certain enumerated, *non*-wage provisions of the NYLL.  NYLL §191, however, is not one of these enumerated *non*-wage provisions—there is no reference in the text of NYLL §198 to NYLL §191 or to so-called "frequency of pay" violations.  This on its own is fatal to Plaintiffs' claim.  As the Court of Appeals recently confirmed, "[w]here the Legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action."  *Konkur*, 38 N.Y.3d at 44.

By its plain meaning, an error regarding the frequency in which payroll is processed would not be understood to be a "wage claim," or an "underpayment" of wages.  For example, it would sound peculiar, indeed, for employees who were told they would be paid $1,000 bi-weekly, and

thereafter *received* $1,000 every two weeks as promised, to complain that their employer underpaid them or that they had a "wage claim" against their employer. They were paid for all the wages they earned on their regularly scheduled payroll date. They do not have a claim for unpaid wages; there are no "wages found to be due." NYLL § 191(1-a).

Similarly, the term underpayment, as both commonly used and understood, means a payment of an amount that is *less than* what is required by the parties' agreement, not *later* than it was due, and not under a statutory frequency of pay obligation found elsewhere in the law. If an employer has agreed to pay an employee bi-weekly, and indeed fulfills that obligation and pays an employee for every penny earned on that bi-weekly schedule, there has been no "underpayment."

Plaintiffs may argue that without a private right of action for NYLL §191, employers could avoid "unpaid" wage claims by paying employees' wages owed at any time before the commencement of a lawsuit. But that is not true, nor does it reflect Defendant's position. If an employer fails to pay employees their full wages on their agreed regularly scheduled payday, the employee will have an unpaid wage claim, whether the regularly scheduled payday was daily, weekly, bi-weekly, semi-monthly, or monthly. If the employer selected the wrong frequency of pay under NYLL §191, the employer would *also* be subject to a fine by the DOL in an administrative or civil proceeding—but that would not be the basis for the unpaid wage claim.

**B.    The structure of the NYLL, including NYLL §218 (the administrative penalties provision for NYLL violations) establishes that a frequency of pay violation is not a "wage claim" subject to private lawsuits, but rather a "non-wage" violation subject to civil penalties imposed by the DOL**

The absence of a private right of action is confirmed by the structure of the NYLL, including the enforcement mechanisms set forth in NYLL §218. When these provisions are read together (which *Vega* did *not* do), the text of the statute shows that technical violations of NYLL

§191 are not "wage claims" subject to liquidated damages, but instead, subject to civil penalties under NYLL §218.

       **1.**       **NYLL §218 establishes two categories of violations—wage claims and non-wage claims**

NYLL §218 and the DOL classify Labor Law violations in two different categories: (1) wage claims, which are violations for failing to pay "wages, benefits, or wage supplements found to be due"; and (2) non-wage claims, which are violations "for a reason *other than* the employer's *failure to pay wages.*"  NYLL §218 (emphasis added).

Critically, the remedies differ depending on whether the violation is a wage claim or a non-wage claim.  For a wage claim, the DOL has no discretion in what remedies are ordered.  It must issue an order for the full amount of "wages, benefits or wage supplements found to be due" and liquidated damages in the amount of 100% of the unpaid wages.  *See* NYLL §218(1) ("In no case shall the order direct payment of an amount less than the total wages, benefits or wage supplements found by the commissioner to be due, plus the liquidated damages in the amount of one hundred percent of unpaid wages, the appropriate civil penalty").

Remedies for violations of the Labor Law for reasons "other than the employer's failure to pay wages," however, are different.  NYLL §218(1).  For these non-wage violations, the Commissioner can issue civil penalties (up to $1,000 - $3,000).  The two remedial schemes are not interchangeable.  For non-wage claims, liquidated damages are not available.  And as explained *infra*, the DOL classifies such violations as non-wage claims not subject to liquidated damages.  The DOL can also bring a civil action for penalties, and employers who violate the law may be subject to criminal prosecution by the Attorney General.  *See* NYLL §§197, 199-a.

The administrative penalties imposed by the DOL, it bears noting, are imposed through enforcement actions that the DOL brings hundreds of times each year and which are subject to

administrative review by the Industrial Board of Appeals ("IBA").[5]  And the IBA too has never

classified frequency violations as a wage-claim subject to liquidated damages.[6]

> **2.      DOL guidance, enforcement actions, and IBA decisions show an error regarding the frequency in which payroll is processed is not a wage claim, but a non-wage claim**

The way the DOL itself classifies frequency of pay violations conclusively establishes that

frequency of pay claims are non-wage claims. The DOL's website informing employees about

how to file complaints classifies violations of wage laws it enforces into four groups: (1) "Unpaid

Wages"; (2) "Unpaid Wage Supplements" (*e.g.*, vacation); (3) "Minimum Wage/Overtime"; and

(4) *Non-Wage* Items."  https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements (visited

August 5, 2022) (emphasis added).  Dispositive here, the DOL identifies frequency of pay claims

as "*non*-wage" claims:

> **Non-Wage Items:**
>
>      Your employer failed to provide the required meal period, day of rest, pay stub, notice of pay, ***timely payment of wages***, or took a negative action against you for making a complaint related to the Labor Law.  *Id*. (emphasis added).[7]

Similarly, the DOL's "Complaint Form," also identifies frequency of pay claims as "non-

wage complaint[s]."  *See* N.Y. DOL's Labor Standards Complaint Form (Mar. 2021 ed.) at Part 8,

No. 37(h), available at  https://dol.ny.gov/system/files/documents/2021/03/ls223.pdf  (visited

---

[5] The IBA was created by the Legislature in 1975 as an independent review and appeals board charged under the Labor Law with providing an impartial administrative review of the validity or reasonableness of rules, regulations or orders issued by the Commissioner of Labor.  See https://industrialappeals.ny.gov/about-us (visited July 20, 2022); NYLL § 100.

[6] Employers subject to administrative enforcement for violations receive an Order to Comply.  They can appeal such violations to the IBA, request a hearing, and then seek further judicial review in an Article 78 proceeding if they are dissatisfied with the IBA's ruling.  NYLL §102; see, e.g., *IKEA U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dep't 1997).
[7] Attached as Exhibit 1 to the Gross Dec.

August 5, 2022).[8]  And the guidelines issued by the DOL for imposing civil penalties under the Labor Law are consistent.[9]  In those Guidelines, the DOL explains how violations are classified and explains "where the violation is for a reason *other than the employer's failure to pay wages*, benefits or wage supplements found to be due" (using the factors identified by the statute) civil penalties of up to $1,000 -$3,000 under NYLL §218 are available, and then specifically identifies "failure to make timely payment of wages" under NYLL §191 as a Labor Law violation that is a violation other than the failure to pay wages.  *Id*. (emphasis added).

DOL opinion letters mirror this classification.  *See* DOL Op. Ltr., May 8, 2007 (noting violations of NYLL §191's pay frequency requirement would "be calculated based upon the up to $1,000.00, $2,000.00, or $3,000.00 civil penalties . . . as provided [under] Labor Law §218" and not identifying liquidated damages as a remedy).[10]

And conclusively, the IBA decisions confirm that errors relating to the frequency in which payroll is processed is a non-wage claim because the DOL has only sought (and the IBA has only awarded) civil penalties, not liquidated damages, for violations of the frequency requirements.  If a frequency error was a wage claim—the DOL and IBA would be compelled to impose liquidated damages as Plaintiffs seek here.  But they have *never* done that.  They have always enforced these violations of NYLL §191 as "non-wage" claims, subject to the discretionary penalties of up to $1,000-$3,000.  *See*, *e.g., Ram Hotels, Inc*., PR 08-078 at p.2 (Indus. Bd. of Appeals Oct. 11, 2011)[11] (awarding a penalty of $100 for violation of frequency of pay provision, not the wages

---

[8]Attached as Exhibit 2 to the Gross Dec.

[9]Attached as Exhibit 3 to the Gross Dec.

[10]Attached as Exhibit 4 to the Gross Dec.

[11] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-08-078.pdf.

that were paid with the incorrect frequency); *Hudson Valley Mall Dental*, PR 12-034, at p. 1 (Indus. Bd. of Appeals Aug. 7, 2014)[12] (awarding a penalty of $100 for violation of weekly pay requirement, not wages paid later than required by NYLL §191).

The DOL's enforcement action and the IBA review of that action in *Ribble (d/b/a Perfecto Cleaners)*, PR No. 06-038, 039 (Indus. Bd. of Appeals, Dec. 19, 2007),[13] provides a good example. In that case, the Commissioner of Labor issued an Order to Comply finding the employer did not pay its manual workers on a weekly basis, as required, for *two years*. The DOL issued a penalty of $1,000 for the violation in accordance with NYLL §218. *Id*. at pp. 2, 5-6. It did not impose damages of 100% of the wages paid at the wrong frequency. *See also Century Diner Buffet, Inc*., PR 12-180 (Indus. Bd. of Appeals, July 13, 2016) (finding one employee (Lin) was paid all his wages, but because he was paid monthly, instead of weekly, imposed a penalty of $1,000, not damages equal to all his wages because he was paid monthly);[14] *RJS Janitorial, LLC*, PR 15-148 (Indus. Bd. of Appeals, Oct. 24, 2018) (imposing civil penalties for violations of the weekly payment law, not liquidated damages, because a violation of the weekly payment law under NYLL §218 is a violation for a reason "other than an employer's failure to pay wages" which is not subject to liquidated damages (the remedy Plaintiffs seek here).[15] If a pay frequency error is a wage claim, the DOL and IBA would have been statutorily required to impose liquidated damages. The fact that the DOL and IBA have not done so shows that such violations are *not* wage claims or claims

---

[12] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-034.pdf.

[13] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr06038_1.pdf.

[14] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-180.pdf.

[15] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-15-148.pdf. Note, these decisions are just examples; there are countless other IBA decisions only imposing civil penalties for frequency of pay violations because such violations are not classified as violations involving underpayment of wages.

resulting in wages "found to be due" subject to liquidated damages.   If Plaintiffs are correct, the DOL has been repeatedly misapplying the law for more than 50 years without anyone noticing and thousands of IBA decisions and DOL enforcement actions must be invalidated.

In sum, the agency charged with enforcing the law has always classified payroll frequency claims as non-wage claims because that is what the statute requires.  And its classification of these claims as non-wage claims is entitled to deference.  *See Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471 (2013) ("We have recognized that the DOL's 'interpretation of a statute it is charged with enforcing is entitled to deference'") (*quoting Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008)). DOL enforcement actions and IBA decisions reviewing those actions make clear that violations of the pay frequency provisions are a non-wage violation, not a wage claim subject to liquidated damages.  Since it is not a wage claim, it is not subject to private enforcement under NYLL §198 because only wage claims and specifically enumerated non-wage claims (such as NYLL § 195) are subject to private enforcement under NYLL §198.

### C.   The statutory and legislative history further confirm a violation of NYLL §191 is not a "wage claim" under NYLL §198

The legislative history of both NYLL §§191 and 198 further establishes that a violation of NYLL §191 is not, and has never been, a "wage claim" under NYLL §198.  Section 191, which contains the weekly payment law, dates back to 1890.  Section 198, in contrast, dates back to 1937 when it was called the "Model Wage Bill," and was enacted to provide a cause of action for unpaid wages.  The two laws were different statutes, with different histories, and were intended to address different concerns.  They were and have always been independent of one another.  One provides a private right of action for claims of unpaid wages, and the other, regulating frequency of pay, is enforced by the DOL through civil and administrative actions and through the penal law.

1.     **Statutory and legislative history of NYLL §191 show there is no private right of action for errors relating to the frequency in which payroll is processed**

The weekly pay law was enacted in 1890, more than 130 years ago.  It did not provide a private right of action then, and it does not today.  A short trip back to 1890 to the present tells the story.

a)     **The Weekly Payment Law 1890 - 1965**

The weekly pay requirement was first codified as § 6 of the Labor Law.  It was known then as the "Weekly Payment Act," and Section One of the new Act required certain employers to pay employees "weekly."  L. 1890, ch. 388, § 1;[16] *See People ex rel. Van Valkenburg v. Myers*, 33 N.Y. St. Rep. 18, 11 N.Y.S. 217, 25 Abb. N. Cas. 368 (Sup. Ct., N.Y. Cty. 1890) (referring to L. 1890, ch. 388 as the "Weekly Payment Law").  Section Two of the Weekly Payment Act (then codified as Labor Law § 7), in turn, provided the remedy: a penalty of between $10-$50 to be paid to the people of the State, which was to be recovered in a civil action brought by the "factory inspectors" [predecessor to the DOL] for whom the Attorney General would appear. *Id.* at §§ 2-3.  Indeed, after the Weekly Payment Act was enacted, the Factory Inspectors and the Attorney General (or designees) brought actions to enforce the law.  *See* "The Weekly Payment Law.  It is Being Generally Enforced—Transgressors Will Be Punished," N.Y. Times, Aug. 16, 1890; *People v. City of Buffalo*, 11 N.Y.S. 314 (5th Dep't 1890) (action to enforce the weekly payment law).

Between 1890 and 1966 (when the Labor Law was recodified), the Weekly Payment Act was amended several times to expand the scope of its coverage and renumbered, but the remedy provision did not change—violations were subject to civil penalties.[17]

---

[16] Attached to Gross Dec. as Exhibit 5.
[17] *See* L. 1897, ch. 415 (Expanding the law to include more employers. The law was also renumbered in 1897 as Labor Law § 10, and the remedy provision, a civil penalty to be recovered in a civil action brought by the State, was renumbered as Labor Law § 11) (attached to Gross Dec. as Exh. 6); L. 1908, ch. 442

**b)      The 1966 Recodification of the Labor Law and Renumbering of the Weekly Payment Law as NYLL §191**

In 1966, Article 6 of the Labor Law was repealed, reorganized, and recodified to make the law clearer after multiple amendments during the preceding 50 years.  *See* Bill Jacket, Mem. In Support of L. 1966, ch. 548.[18]  Significantly, however, the 1966 amendment did not change the Weekly Payment Act as it relates to manual workers employed by for-profit corporations or modify the remedy for a violation (a civil penalty).  *See Id*. ("This bill retains the present provisions for manual and railroad workers and for salesmen.").

As a result of the 1966 amendment, the Weekly Payment Act, which began its life as New York Labor Law §6, then renumbered as §10, and later as §196, was once again renumbered as NYLL §191 (where it resides today).  It was also retitled, "Frequency of Payments" (as it no longer only governed *weekly* pay but set forth the frequency of pay for various classes of workers).  The civil remedies provision was renumbered again, this time as NYLL § 197, where it also resides today.  *See* L. 1966, ch. 548.[19]

**c)      Amendments to NYLL §191 from 1966 – Present**

Following the 1966 repeal and recodification of the Labor Law, The Weekly Payment Act was amended four more times: *See* L. 1987, ch. 404, § 1 (addressing mailing of checks to railroad workers);[20] L. 1989, ch. 38, §1 (allowing certain employers to pay manual workers every two

---

(including railroad workers to coverage) (attached to Gross Dec. as Exh. 7);  L. 1921, ch. 50 (the law was again renumbered, this time as New York Labor Law § 196.  And the corresponding civil penalty provision (then Labor Law § 11), was renumbered as NYLL §198) (attached to Gross Dec. as Exhibit 8); L. 1935, ch. 619 (expanding scope of coverage) (attached to Gross Dec. as Exh. 9).

[18] Attached to Gross Dec. as Exh. 10.
[19] Attached to Gross Dec. as Exhibit 11.

[20] Attached to Gross Dec. as Exhibit 12.

weeks rather than every week if they have over 1,000 workers);[21] L. 1993, ch. 168, §1 (expanding waiver of weekly pay for large employers employing 1,000 workers in-state, but more than 3,000 employed out-of-state);[22] and L. 2007, ch. 304, §4 (addressing commissioned salespeople).[23]  But the civil remedy for violations of the Weekly Payment Act (renumbered NYLL §197 following the 1966 recodification) remained the same as it was enacted in 1890—permitting the [now Commissioner of Labor] to file a civil action and seek a civil penalty, except that a 2002 amendment increased the civil penalty from $50 to $500.  *See* L. 2002, ch. 427.[24]

In the 1980s, the New York Legislature added new tools to enforce the law.  In 1980, it enacted NYLL §218, enhancing the enforcement efforts of the DOL by granting the DOL the ability to issue civil fines in administrative hearings (rather than filing civil actions in court under NYLL § 197) for unpaid wage claims.  *See* Bill Jacket, Budget Rep., L. 1980, ch. 697.[25]  And in 1987 it amended NYLL §218 to permit the DOL to issue penalties of $1,000-$3,000 for violations for non-wage violations.  *See* L. 1987, ch. 417, Bill Jacket, p. 5, Mem. of Commissioner of Labor[26] (noting the "purpose of the bill" is to "provide for civil penalties and interest assessments against violators of notice, recordkeeping and other *non-wage* requirements set forth in the labor law.") (emphasis added).  But one thing has not changed in 130 years: both the statutory text of NYLL §191 and its legislative history have remained devoid of any language supporting the claim that

---

[21] Attached to Gross Dec. as Exhibit 13.

[22] Attached to Gross Dec. as Exhibit 14.

[23] Attached to Gross Dec. as Exhibit 15.

[24] Attached to Gross Dec. as Exhibit 16.

[25] Attached to Gross Dec. as Exhibit 17.

[26] Attached to Gross Dec. as Exhibit 18.

the Legislature intended to permit a private right of action for violating the Weekly Payment Act (or, as it is now known, NYLL §191).

> **2.** **Statutory and legislative history of NYLL §198 establish that §198 was enacted to provide a statutory cause of action for wage claims, and not to provide a cause of action for errors relating to the frequency in which payroll is processed, a non-wage claim**

The legislative history of NYLL §198 similarly confirms that the Legislature never characterized a violation of the weekly payment law as a "wage claim" that would trigger a violation of NYLL §198. But as with NYLL §191, we need to take a trip back in time, though not as far back as 1890.

> **a)** **The 1937 Model Wage Bill**

Enacted in 1937, the "Model Wage Bill," which would eventually be renumbered NYLL §198, was designed to reduce the number of unpaid wage claims clogging up the State's municipal court dockets. It had nothing to do with frequency of pay requirements. Specifically, before its enactment, employees' only recourse for unpaid wages was a private action for common law breach of contract, and the sheer number of these "small wage claims" had overwhelmed both the municipal courts and the Legal Aid Society (which prosecuted these cases on behalf of New York's indigent employees). *See* L. 1937, ch. 500;[27] Bill Jacket, Ltr. Legal Aid Comm. Ass' of the Bar (sponsor), pp. 4-6.[28]

The Bill's primary purpose was to alleviate the burden of these unpaid wage claims by authorizing the Commissioner of Labor to "take assignments of wage claims and to institute suits for enforcement." *Id*. By doing so, it was the Legislature's hope that employees would "be spared

---

[27] Attached to Gross Dec. as Exhibit 19.

[28] Attached to Gross Dec. as Exhibit 20.

the expense and disheartening procedure of suing on them individually," and that the Legal Aid Society would, "upon being freed from this burden . . . be enabled to devote itself to other work which cannot now be adequately handled."  *Id*. at 5.  Thus, the Model Wage Bill, codified as Labor Law §199 and §199-a, gave the Commissioner of Labor and employees the statutory right to bring a civil action for unpaid wages.  L. 1937, ch. 500, §1 (adding NYLL §199-a).[29]

The legislative history makes clear that "wage claims" refer to claims for unpaid or underpaid wages.  Critical here, the memoranda in support of the bill explained that "wage claims" arise in three fact scenarios (*none* of which involve violations of the Weekly Pay Law):

(1) disputes between employers and employees regarding what amount the employer agreed to pay;

(2) employers who became insolvent and as a result failed to pay wages; and

(3) employers who acted in "bad faith" and simply refused to pay wages.

See L. 1937, ch. 500, Bill Jacket, p. 13.[30]

Nothing in the legislative history suggests that the Model Wage Law created a private right of action for a violation of the *Weekly Payment Act*.  First, the two were enacted to address different concerns.  The Weekly Payment Act addressed how frequently employers were required to pay employees; the Model Wage Law addressed actions for the failure to pay wages.

Second, much of the legislative history addresses the importance of vesting the Commissioner with *new* authority to adjust and prosecute "wage claims."  The phrase "wage claims" could not be a reference to frequency of pay violations, as the Commissioner already had the authority to bring frequency of pay claims – there was no need for new legislation to enforce the Commissioner's existing rights.  Had the Legislature intended to revise the remedies available

---

[29] *See* Gross Dec. Exhibit 19.

[30] Attached to Gross Dec. as Exhibit 21.

for frequency of pay violations (*i.e.,* by treating late wages as unpaid wages, not as violations subject to a civil penalty), it would have only needed to revise the remedy section of the existing Weekly Payment Act, which it did not do.

Third, the legislative history repeatedly refers to alleviating the existing small wage claims filed by employees pending in the State's courts.  These existing claims could not have included technical violations of the Weekly Payment Act, which, until very recently, and mainly post-*Vega*, were never pending in any court.  There is no reference, in either the law or the legislative history, to frequency of pay violations, even though the Weekly Payment Act had been in effect for almost 50 years.  If it was intended to create a private right of action, it would have mentioned violations of the Weekly Pay Law.  It did not.  This alone should be dispositive.

### b)        1966 – Present

When the Labor Law was repealed in 1966 and recodified, §199-b was renumbered again, this time as NYLL §198, where it is found today.  *See*; Bill Jacket, L. 1966, ch. 548, p. 10.[31] Accordingly, NYLL §198 is simply the recodified version of the 1937 Model Wage Bill.

Later amendments reinforce, too, that the Legislature intended NYLL §198 to address claims for *unpaid* wages, not frequency of pay claims.  In 1997, the Model Wage Law was amended by the "Unpaid Wages Prohibition Act." L. 1997, ch. 605, §2.[32]  This amendment made several changes to the Labor Law to "strengthen deterrence and enhance enforcement of employer *underpayment* and *non-payment* of employee wages."  *See* Bill Jacket, Gov. Mem. In Support., L. 1997, ch. 605, Sep. 17, 1997 (emphasis added) ("1997 Gov. Mem.").[33]

---

[31] *See* Gross Dec. as Exhibit 11.

[32] Attached to Gross Dec. as Exhibit 22.

[33] Attached to Gross Dec. as Exhibit 23.

The law had nothing to do with the weekly payment law or frequency of pay provision. Indeed, there is not a single mention of the weekly payment law or NYLL §191 in any of the legislative history of the Unpaid Wages Prohibition Act. L. 1997, ch. 605, § 1.  As in 1937, the Legislature's stated and singular intent was to address employers who failed to pay their employees, not employers who paid their employees bi-weekly, instead of weekly.

In 2010, the Legislature passed the "Wage Theft Prevention Act," which amended the Model Wage Law to increase liquidated damages for claims seeking unpaid wages from 25% to 100%.  *See* L. 2010, ch. 564.[34]  It also created a new obligation for employers to provide employees notice of their wages and compliant wage statements and, significantly, created *new* private rights of action for employers who failed to do so.  *See* L. 2010, ch. 564.  If, as Plaintiffs suggest, Section 198(1-a) automatically provides a private right of action for *all* violations of Article Six (and not just for unpaid wage claims), there would have been no reason for the Legislature to create a right of action for the notice provisions in 2010.  And we know it does not because the Court of Appeals recently held in *Konkur* that NYLL §198-b, an Article 6 provision, does not provide for a private right of action.  Notably, there are many obligations created by the Labor Law that also provide no private right of action.[35]

More critically, when the Legislature amended NYLL §198(1-a) in 2010 to allow a prevailing employee on a wage claim to recover "the full amount of any *underpayment*" and liquidated damages "of the wages found to be due," the Sponsor's Memorandum justified the

---

[34] Attached to Gross Dec. as Exhibit 24.

[35] *See, e.g., De Los Santos v. Hat Trick Pizza, Inc. (In re Domino's Pizza Inc.)*, 2018 U.S. Dist. LEXIS 51393 (S.D.N.Y. Mar. 27, 2018) (no private right of action under NYLL 162, failure to provide a meal period); *Chan v. Big Geyser, Inc.*, 2018 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 30, 2018) (no private right of action under 195(2) and (4)); *Kone v. Joy Constr. Corp.*, 2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016) (no private right of action under 195(5)).

amendment by arguing for the need to penalize employers who do not pay their employees the correct wage. *See* Bill Jacket, Commissioner of Labor Mem., L. 2010, ch. 564, p. 9.[36]  Thus, when the Legislature added the word "*underpayment*" in 2010, it used that word to describe the *failure* to pay wages, or the underpayment of wages, not payroll processing errors under NYLL §191.

> **3.      The 2021 "No Wage Theft Loophole Act," clarifies that both NYLL §198 and §193 provide the substantive right to collect unpaid wages, not §191, further establishing §191 provides no private right of action for frequency errors**

The last amendment to NYLL §198, 2021's "No Wage Theft Loophole Act," L. 2021, c. 397 ("2021 Wage Act"),[37] answered a question that had caused significant confusion in the courts: what section of the NYLL provides a private right of action for wages which genuinely are unpaid (*i.e.,* true underpayments)?  Is it NYLL §191, §193, which prohibits "deductions" from wages, or §198 itself?  The 2021 Amendment clarifies "once and for all" that a claim for unpaid wages under the NYLL is cognizable either under NYLL §§193 or 198—not §191.

We take a short detour here to explain this confusion.  The detour is necessary because it confirms that NYLL §191 is not even the source of a private right of action for an unpaid wage claim (though it has been cited as such), let alone a frequency of pay claim.

The confusion around what provision of the NYLL authorizes a private right of action for unpaid wages dates back at least to the Court of Appeals' decision in *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457 (1993).  That confusion permeates today and, as relevant here, has led some courts to conclude, incorrectly, that NYLL §191 provides the basis for such an *unpaid wage* claim. The legislature has now re-confirmed that it does not.

---

[36] Attached to Gross Dec. as Exhibit 25.

[37] Attached to Gross Dec. as Exhibit 26.

As discussed above, NYLL §198 has always been the source of a claim for unpaid wages—the Model Wage Bill was, after all, enacted specifically to allow employees to bring wage claims in court. *Gottlieb*, however, held that the then-current version of NYLL §198 was procedural, not substantive.[38]  It did not, according to the Court, provide for its own cause of action, but "merely … afford[ed the] procedural rules, including costs and cost-related remedies" for violations of other sections of the NYLL.  *Gottlieb*, 82 N.Y.2d at 464.

Critically, the Court did not identify what section of the NYLL would provide for an unpaid wage claim—it only concluded that NYLL §198 did not.  This forced courts to look for some other section of the Labor Law as the "substantive" basis for an unpaid wage claim, as otherwise the NYLL would not provide any right to bring a claim for unpaid wages.  Prior to the 2021 Amendment, courts essentially took one of three approaches:

- Some courts cited NYLL §191 as the substantive basis for an unpaid wage claim (separate and apart from its frequency of pay requirements).[39]  This, in addition to being wrong and unsupported by the statutory text or legislative history, created a significant "loophole" in the NYLL that the 2021 Amendment closed—*i.e.*, if NYLL §191 was the source of an unpaid wage claim, employees earning over $900 a week (who are excluded from coverage under NYLL §191)[40] would have no statutory claim for unpaid wages.

- Some courts, instead, cited NYLL §193 as the substantive basis for an unpaid wage claim, concluding that the failure to pay wages is no different than a partial deduction from wages.[41]  This approach was later adopted by the Court of Appeals in *Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y. 3d 1 (2012), which

---

[38] Critically, and as noted below, NYLL §198 was amended in 1997 to include "rights-affirming language" and correct the miscomprehension reflected in *Gottlieb*.

[39] *See, e.g., Calle v. Yoneles Enters., Inc.*, 2017 U.S. Dist. LEXIS 178724, at *7 (E.D.N.Y. Oct. 24, 2017) ("Section 191 of the NYLL mandates that workers 'be paid . . . in accordance with the agreed terms of employment . . . .'" (*quoting* NYLL §191(1)(a)(i), 191(1)(d))), R & R adopted, 2018 U.S. Dist. LEXIS 5976 (E.D.N.Y. Jan. 12, 2018).

[40] NYLL § 190(7).

[41] *See, e.g., Gertler v. Davidoff Hutcher & Citron*, LLP, 186 A.D.3d 801, 808 (2d Dep't 2020) (noting a claim for unpaid wages is cognizable under NYLL §193, citing *Ryan*); *see also Quallen v. Impendi Analytics, LLC*, 2021 N.Y. Misc. LEXIS 6733, * 7 (Sup. Ct. N.Y. Cty. Dec. 21, 2021).

held that an employee who was not paid their wages (a bonus) was entitled to attorneys' fees under NYLL §198 because the "neglect to pay them the bonus violated *NYLL §193.*"  *Id.* at 23 (emphasis added).  This approach avoids the "loophole," because even employees earning over $900 are covered by NYLL §193.[42]  Yet, even after *Ryan*, there continued to be confusion as to whether a failure to pay wages is a violation of NYLL §193, or some other provision of the NYLL.

▪ Some courts held that NYLL §198 provides a substantive right for an unpaid wage claim, even if it did not at the time *Gottlieb* was decided, as 1997's Unpaid Wages Prohibition Act replaced the version of NYLL §198 relied on by *Gottlieb* with specific "rights-affirming language."[43]

In passing the 2021 Amendment, the Legislature explicitly addressed, and resolved, this split among the Courts, confirming that NYLL §§193 and 198—*not* NYLL §191—provide a private right of action for unpaid wage claims.  First, the Legislature explained that 1997's Unpaid Wages Prohibition Act was passed in direct response to *Gottlieb*, to confirm that NYLL §198 *is* (just as it has always been) the substantive provision of the NYLL that provides employees the "right" to recover unpaid wages.  *See* Scott A. Lucas, *Labor Law Article 6: A Misunderstood Law that Fully Protects All Employees' Wages*, 80 Alb. L. Rev. 1355, 1358 (2016/2017) (explaining that the 1997 Amendment to the NYLL "superseded the Court of Appeals' 1993 decision in *Gottlieb*").  As the Sponsor Memorandum states:

> In *Gottlieb v. Kenneth D. Laub & Co,* . . . the Court of Appeals concluded that Section 198, the part of the Labor Law dealing with penalties and recovery actions, was not "substantive."  Because of this ruling, the legislature amended Section 198 as part of the Unpaid Wages Prohibition Act in 1997 to declare that "all employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action" and noting that "the [1997] rights-affirming language of Section 198 was added post-*Gottlieb*

---

[42] *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609 (2008).

[43] *See, e.g., Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2018 U.S. Dist. LEXIS 50787, at *9 (E.D.N.Y. Mar. 27, 2018); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011).

> precisely because of *Gottlieb. See* Bill Jacket, Mem. In Support., L. 2021, ch. 397.[44]

In other words, and according to the Legislature itself: NYLL §198 provides a substantive right for an unpaid wage claim, and *Gottlieb's* holding that it does not is no longer good law.[45]

Second, the legislature confirmed that NYLL §193 also provides a right to bring an unpaid wage claim, as the Court of Appeals had held in *Ryan*:

> "The purpose of this remedial amendment is to clarify that: (a) the unauthorized failure to pay wages, benefits and wage supplements has always been encompassed by the prohibitions of section 193, *see*, *e.g.*, *Ryan v. Kellogg Partners Inst. Servs*., 19 N.Y. 3d 1, 16 (2012) (correctly holding that employer's neglect to pay sum that constitutes a "wage" violated section 193); and (b) consistent with established principles of statutory construction, section 193 should be harmonized with section 198(3)'s guarantee that "All employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages." L. 2021, ch. 397, § 1 (emphasis added).

The legislature did not, however, amend NYLL §191, nor did it mention NYLL §191 anywhere in its legislative history.  This is because NYLL §191 does not, and never has, provided the substantive basis for an unpaid wage claim.  And it certainly does not provide a private cause of action for a violation of its frequency of pay requirements.

---

[44] *Gottlieb* cited the legislative history of the 1966 amendment to the NYLL, stating it was "originally enacted in 1966 as part of Labor Law article 6." *Id.* at 461. But as explained above, while it is true that the Labor Law included NYLL §198 in the 1966 recodification, the text of the 1966 enacted version of NYLL §198, pre-dated the 1966 recodification of the NYLL and is simply the language from the former Model Wage Bill, enacted in 1937.  Neither party in *Gottlieb* cited the 1937 legislative history.

[45] Many courts today still incorrectly cite *Gottlieb* for the proposition that NYLL §198 is not "substantive." *See*, *e.g.*, *Scott*, 2019 U.S. Dist. LEXIS 61726, *5.  But other courts more carefully reading the legislative history have noted correctly that *Gottlieb* has been superseded by later amendments to NYLL §198. *See Cavalotti v. Daddyo's BBQ, Inc*., 2018 U.S. Dist. LEXIS 154918, at *40-41 (E.D.N.Y. Sep. 8, 2018) ("there is a significant question of New York statutory interpretation as to the relevance, if any, of *Gottlieb* to interpretation of post-*Gottlieb* amendments to NYLL §198, of which there have been several.").

**D.      Conclusion: there is no express right of action under the Labor Law for errors in frequency in which payroll is processed**

In the end, we end up where we started—the Model Wage Bill, which is now NYLL §198, is and has always been, the substantive section of the Labor Law that provides for a private right of action for an unpaid wage claim.  But, a violation of the Weekly Payment Law is not, and has never been, a "wage claim" under the Model Wage Bill.  The two laws were different statutes, with different histories, and were intended to address different concerns.  They were independent of one another, only crossing paths in 1966 when the Labor Law was recodified and renumbered.  One (the Model Wage Bill) provides a private cause of action for unpaid wages; the other (the Weekly Payment Law) never did and does not today.  The legislative history confirms what is clear from the statutory text and statutory and legislative history—there is no express private right of action.

<div align="center">

**POINT TWO**

**The Court Should Not Recognize an Implied Private Right of Action for Violations of the Pay Frequency Requirements of NYLL §191**

</div>

**I.      Under *Konkur,* the Court cannot create an implied cause of action under Article 6 because the Legislature has already created a comprehensive enforcement mechanism for enforcing violations of the Weekly Pay Law under Article 6.  Doing so would also violate separation of powers.**

Failing to show that the Labor Law contains an express private right of action to sue for errors relating to the frequency in which payroll is processed, Plaintiffs will ask the Court to find an implied private right of action, relying on *Vega*.  The Court should decline this invitation.  Doing so would conflict with *Konkur v Utica Academy of Science Charter Sch*., 38 NY3d 38 (2022), decided after *Vega*, and the precedent *Konkur* relied on.

Where the Legislature has not provided for an express right of action, the New York Court of Appeals applies a three-factor test in determining whether the Court should create an "implied"

private right of action. *Id.* at 633. The three factors are: (1) whether the plaintiff is one of the classes for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme. *Id.* All three factors must be satisfied. *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021). "The second prong is a two-part inquiry: (a) determining what the Legislature was seeking to accomplish when it enacted the statute; and (b) whether a private right of action would promote that objective." *Id.* at 363. But the third factor is the "most important" and usually dispositive. *See Konkur*, 2022 N.Y. LEXIS at * 4; *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013).

As to the first factor, Defendant disputes that the Plaintiffs here are "manual workers." A "manual worker" is defined as a "a mechanic, workingman or laborer." NYLL §190(4). That list is narrow; in contrast to the catch-all category of "clerical and *other* workers" which is broad. *See* NYLL §190(7) (emphasis added). Defendant denies that Plaintiffs classify as "manual workers." While caselaw regarding the definition of "manual worker" is sparse because no court ever recognized a private right of action so no lawsuits were brought, IBA cases establish that "workingmen or laborers" are individuals engaged in low-skilled physical work (performed with little or no training or experience) dependent primarily on strenuous physical exertion involving the movement of heavy objects from one place to another, and typically performed outdoors. *See e.g.*, *Hudson Valley Mall Dental*, (Indus. Bd. of App. PR 12-034) (Aug. 7, 2014) (noting a laborer is a construction worker or someone employed to "dig a ditch"). The allegations in the Amended Complaint unequivocally fail to establish that the Plaintiffs' duties meet the manual worker definition set forth by the IBA.

As to the second factor, when the law was first passed, the purpose was to "assure prompt payment of daily wages to those employed in a subordinate capacity and who depended upon their earnings on a per diem rather than on a salary basis." *People v. Vetri*, 309 N.Y. 401, 405 (1955). In 1989 the weekly payment law was amended to allow large employers (those with over 1,000) to pay manual workers less frequently (up to semi-monthly) if the employer submits financial information to the Commissioner of Labor to "assist the commission in determining the likelihood of the employer's continuing ability to meet payroll responsibilities." NYLL §191(a). In this way, employers with many employees and in multiple states, or an in-state employer with manual and non-manual workers, can issue just one payroll. Thus, even "manual workers" can now be paid less frequently than weekly. Non-profits are also expressly excluded from the statute from the weekly pay requirement. Accordingly, the "purpose" of the law (if one can be ascertained) appears now addressed to ensuring that employees *receive* all their wages (whether weekly, bi-weekly, semi-monthly, etc.), ensuring the employer can make payroll, and minimizing the cost of processing two separate payrolls for different groups of workers.

The third and "most important" factor—whether creating a private right of action would be consistent with the legislative scheme—"typically turns on the Legislature's choice to provide one particular enforcement mechanism to the exclusion of others, because it demonstrates that the Legislature considered and decided what avenues of relief were appropriate." *Konkur*, 2022 N.Y. LEXIS at *5, (*quoting* Ortiz, 27 N.Y.3d 353). "[T]he Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves." *Id.* (quoting *Sheehy v. Big Flats Community Day, Inc.*, 73 N.Y.2d 629, 634-635 (1989)). Thus, regardless of its consistency with the basic legislative goal, a private right of action

should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.

*Vega* cannot lay claim, even arguably, to be good law after *Konkur*. Applying the *Sheehy* factors, the Court in *Konkur* held that because the statutory scheme in Article 6 already expressly provides "two robust enforcement mechanisms, indicating that the Legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted," it must "decline to find *another* enforcement mechanism beyond the statute's already comprehensive scheme." (internal quotations and citation omitted) (emphasis added). Controlling here, the Court stated very clearly that no private right of action can be imposed for Article 6 provisions because the Legislature has already made such choices:

> Where the Legislature intended for *an article 6 provision* to be enforced individually, it expressly provided a private right of action. *Id*. at *9 (emphasis added).

NYLL §191, *is*, of course, an "article 6 provision." Thus, under binding precedent, no private right of action can be implied. Just as in *Konkur* and the earlier decisions on which the Court in *Konkur* relied (*Sheehy*, *Cruz*, and *Ortiz*), the Legislature has established a comprehensive enforcement mechanism for violations of the weekly payment law, and thus no private right can be implied. The Labor Law provides an express right for numerous *other* provisions of §198, but not §191. Thus, as *Konkur* instructs, it would, therefore, be "anomalous to infer from its silence" that the Legislature intended to create a private right of action where none otherwise exists.

Creating a private right of action here would also violate basic separation of powers principles and due process violations with respect to the alleged damages sought.[46] Article III of the New York State Constitution vests the Senate and the Assembly with the legislative power of

---

[46] *See* Amici Br., Gross Dec. Exhibit 28.

the State, while Article IV vests the executive power in the Governor and Article VI vests the court system with the judicial power. *Saratoga County Chamber of Commerce v. Pataki*, 100 N.Y. 2d 801, 821 (2003). "The separation of powers requires that the Legislature make the critical policy decisions, while the executive branch's authority is to implement those policies." *Id*. at 822 (*quoting Bourquin v. Cuomo*, 85 N.Y.2d 781, 785 (1995). The Legislature here granted the *Commissioner of Labor* the power and discretion to enforce NYLL §191 using the factors identified by the Legislature to determine the amount of the penalty. Plaintiffs seek to supplant that choice and ask this Court to authorize (by implication) remedies that were not authorized by the Legislature.

This violates basic separation of powers in at least two ways. First, by recognizing a private right of action where one has not been expressly provided, it nullifies the choices made by the Legislature, thereby replacing the entire state legislative body with the judiciary—here a federal district court. Second, it takes from the Executive branch the exclusive power to enforce the law and gives that power to private parties, eliminating the ability of the Executive to solely determine how the law should be enforced (*i.e.*, the Executive power) and determine, using the factors identified by the Legislature, what fines are appropriate to impose. *See Kam Shing Chan v City of NY*, 1 F3d 96, 102 (2d Cir. 1993) (noting that the test for recognizing a private right of action "reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes." (*quoting Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, n.9 (1990)).

## II.     This Court should not follow *Vega* because it conflicts with *Konkur* and for at least seven other reasons

"Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc*., 225

F.3d 113, 116 (2d Cir. 2000).  "In determining how the Court of Appeals would rule on this legal

question, the decisions of New York State's Appellate Division are helpful indicators."  *Haar v*

*Nationwide Mut. Fire Ins. Co*., 918 F.3d 231, 233 (2d Cir 2019).  But they are "not authoritative,"

or binding, but rather "datum for ascertaining state law which is not to be disregarded by a federal

court unless it is convinced by other persuasive data that the highest court of the state would decide

otherwise."  *Reddington v. Staten Island Univ. Hosp*., 511 F.3d 126, 133 (2d Cir. 2007); *Gillespie*

*v St. Regis Residence Club, NY Inc*., 461 F. Supp 96, 112, n 10 (S.D.N.Y. 2020).

Such "persuasive data" may include "relevant case law from other jurisdictions on the same

or analogous issues, scholarly writings in the field, and any other resources available to the state's

highest court."  *Michalski*, 225 F.3d at 116.  These "other" resources can include "the statutory

language, pertinent legislative history, the statutory scheme set in historical context, [and] how the

statute can be woven into the state law with the least distortion of the total fabric."  *Zivkovic v*

*Laura Christy, LLC*, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022).  And we need not

look too far for an example of a federal district court rejecting a First Department decision applying

the NYLL.

In *Zivkovic v Laura Christy,* Judge Woods expressly rejected a First Department decision

relating to application of Section 198 of the NYLL.  In *Ahmed v. Morgan's Hotel Grp., Mgmt.,*

*LLC*, 160 A.D.3d 555 (1st Dep't 2018), the First Department held, in a three-paragraph decision

(*Vega* was just seven paragraphs) that an affirmative defense set forth in NYLL §198 that is

applicable to violations of NYLL §195 *also* applies to minimum wage violations.  Even though

the New York Court of Appeals had not issued any opinions on the issue—the First Department

was the only appellate decision, and two federal courts have applied the defense to minimum wage

claims too—Judge Woods rejected the First Department decision finding it was "unreasoned and

ran contrary to the clear text of Section 198" and that it was "unpersuasive" because it "failed to engage at all with the relevant text of the statutes. *Id.* at *4-8. He also refused to follow the two federal court decisions, finding neither "evaluate the entire text or the regulatory history" and that therefore the logic underlying their analysis was "not sound." *Id.* at *10.

Here, just like in *Zivkovic*, there is overwhelming reason to believe the Court of Appeals will not follow *Vega*. As discussed above, *Vega* is no longer good law following *Konkur*. And there are at least seven other good reasons why Vega should not be followed.

First, *Vega* did not consider (at all) the NYLL's enforcement scheme or the structure of the Labor Law, just as the Court in *Ahmed* failed to do. It focused only on NYLL §§191 and 198. Because of this, *Vega* did not analyze or even address NYLL §218 and the DOL's own classification of frequency of pay violations for decades. Had *Vega* done so, it would have easily concluded that the Labor Law, and the DOL, categorize violations of Article 6 into two types: "wage claims" and "non-wage claims," and that frequency of pay violations are non-wage claims.

Second, *Vega* did not review DOL enforcement actions. In those actions, the DOL sought only penalties, not wage underpayments or liquidated damages, conclusively demonstrating that frequency of pay claims are not wage claims involving the underpayment of wages. If a frequency of pay violation was a wage claim, the DOL would have to impose liquidated damages, which it does not.

Third, *Vega* did not review the vast legislative histories of NYLL §§191 and 198, recited here, both of which establish that the Legislature did not consider violations of the Weekly Payment Act to be a "wage claim" when it enacted the Model Wage Bill or at any time since. The First Department did not have the benefit of any briefing about the legislative history; neither party cited *any* portion for the extensive legislative history discussed above. *See Vega v. CM & Assocs.*

*Constr. Mgmt.*, 2018 N.Y. App. Div. Briefs LEXIS 164 (1st Dep't Dec. 20, 2018); 2019 N.Y. App. Div. Briefs LEXIS 240 (1st Dep't Mar. 20, 2019); 2019 N.Y. App. Div. Briefs LEXIS 236 (1st Dep't Mar. 29, 2019).

Fourth, the Court in *Vega* did not have the benefit (as this Court does) of the 2021 Amendment to the Labor Law, which confirms that NYLL §198 is the substantive basis for an unpaid wage claim. *Vega* cites *Gottlieb* for the proposition that NYLL §198(1-a) is not the source for an unpaid wage claim, but rather, only provides remedies for violations of *other* sections of Article 6. *See Vega*, 107 N.Y.S. 3d at 287-88. Because NYLL §191 is part of Article 6, *Vega* concludes NYLL §198(1-a) must provide a remedy for NYLL §191. But the post-*Gottlieb* amendments reaffirm that this is not true, and that NYLL §198 does provide an independent substantive right for an unpaid wage claim. Further, NYLL §198 does not provide remedies for all violations of Article 6 as the Court of Appeals just made clear in *Konkur*, finding no private right of action for NYLL §198-b.

Fifth*, Vega* also conflicts with the Court of Appeals' decisions in *Ryan* and *Pachter*, both of which cite NYLL §193 (*not* NYLL §191) as the substantive basis for an unpaid wage claim. If *Vega* had followed *Ryan* and *Pachter*, both of which post-date *Gottlieb*, it also would have found a frequency of pay violation is not an unpaid wage claim.

Sixth, even if NYLL §191 did provide a substantive right for an unpaid wage claim, *Vega* took the unwarranted leap that an error in the frequency of processing payroll *is* an unpaid "wage claim." It did so based only on the dictionary definition of "underpay," from Merriam Webster's Collegiate Dictionary 1364 (11th ed. 2012), which defines "underpay" as "to pay less than what is normal or required." According to *Vega*, "[t]he moment that an employer fails to pay wages in compliance with [NYLL §191], the employer pays less than what is required." But that definition

does not support the conclusion; it supports just the opposite—it states paying "*less than*" is an underpayment, not *later* than.  And other dictionaries variously define the word "underpayment" without regard to whether it is required by statute, versus an agreement among parties (a gloss *Vega* added).  *See, e.g.*, Webster's Third New International Dictionary 2489 (1961) (defining underpayment to mean "payment of inadequate salary or wages"); New Oxford American Dictionary 1884 (3rd Ed. 2010) (defining underpay to mean "pay too little to (someone)"; or "pay less than is due for (something)."  In light of the text and structure of the statute (including §218, which *Vega* did not cite) and the legislative history, the outcome should not depend on which dictionary definition is used.

Seventh, even assuming this were a plausible interpretation of underpayment—and, as set forth above, it is not—it contradicts the Court of Appeals' holding in *Konkur*.  There, the plaintiff alleged that his employer had improperly collected "portions of [his] wage, salary, and [] overtime" through illegal kickbacks.  Stated another way: he claimed that he was paid *less than* what was required.  Even so, the Court of Appeals held that there was no express private right of action. While *Konkur* did not address the *Vega* decision, *Vega*'s construction of underpayment conflicts with *Konkur*.  If *Vega*'s interpretation of "underpayment" is correct, the Court of Appeals' decision in *Konkur* is not, as certainly being required to kick back a portion of wages is being paid less than required.

Plaintiffs will cite to *Mabe v. Wal-Mart*, 2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022) in support of their claim that *Konkur* does not conflict with *Vega*. In *Mabe*, the Court followed *Vega* after mistakenly concluding there is no conflict between *Vega* and the "Second Department" because it found the Second *Department* decided *Max Finkelstein,* 73 Misc. 3d 1, 3-4 (App. Term 2021), which followed *Vega*.  But *Max Finkelstein* is a decision from the Appellate

*Term*, not the Second Department.  The Appellate Term has no power to review a New York Supreme Court ruling; cannot overrule a Supreme Court decision; and its decisions are not binding on the Supreme Court, even in the Second Department.  *Mears v. Chrysler Fin. Corp.*, 243 A.D.2d 270, 272, 663 N.Y.S.2d 22 (1st Dep't 1997); *People v. Garcia*, 21 Misc. 3d 732, 737 870 N.Y.S. 2d 851,855 (Sup. Ct. Bronx Cty, 2008).  The Appellate Term does not sit below the Supreme Court; it is a coordinate court and its decisions are, as with any other Supreme Court decision, persuasive, but not binding authority.  *Id*. at 739.  This Court is not bound by *Vega*.  And notably, while the court in *Mabe* held that *Konkur* was not enough for it to conclude the Court of Appeals would not follow *Vega*, the court acknowledged that the New York Court of Appeals "might conclude that Section 191(1)(a) violations are not privately actionable" based on *Konkur*.  The court provided little analysis of *why* the Court of Appeals would follow *Vega* in light of *Konkur*, and certainty did not address the arguments Defendant raises here.

This Court should follow the numerous state and federal cases finding no private right of action exists.  *See, e.g.*, *Grant v. Global Aircraft,* 2021 N.Y. Misc. LEXIS 11125 (Sup. Ct, Queens County Apr. 20, 2021);[47] *Hunter v. Planned Bldg. Servs., Inc*., 2018 N.Y. Misc. LEXIS 2896, at *4 (Sup. Ct. Queens Cty. June 11, 2018) ("The Court finds based upon the statutory provisions and the interpreting case law that Plaintiff has no private right of action under NYLL §198 (1-a) for a frequency of payment violation of NYLL §191(1)(a)(i) where there is no claim for unpaid wages."); *Hussain v. Pak. Int'l Airlines Corp*., 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012) (describing violations of the frequency of pay provisions under NYLL §191 as "technical violations" and holding the "NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment" and noting that Section 198(1-a) applies to

---

[47] *Grant* is on appeal at the Second Department and is fully briefed waiting oral argument.

"underpayment of wages"); *Gardner v. D&D Elec. Constr. Co., Inc.*, 2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y. Cty. Aug. 7, 2019) (same); *Nicholson v. Alliance Nursing Staffing*, 2019 N.Y. Misc. LEXIS 22473 (Sup. Ct., Bronx Cty. Apr. 30, 2019) (granting motion to dismiss frequency of pay claim under NYLL §191); *Arciello v. Cty of Nassau*, 2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. 2019) (granting motion to dismiss claim for untimely payment of wages under NYLL § 191); *Coley v Vannguard Urban Improvement Assn.*, 2018 U.S. Dist. LEXIS 54609, *42 (E.D.N.Y. Mar. 29, 2018); *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp.3d 336, 360 & n.22 (S.D.N.Y. 2014).

Even federal courts that followed *Vega* (before *Konkur*) did so begrudgingly.  A good example is Judge Chen from the Eastern District of New York.  In *Coley*, decided *before Vega*, Judge Chen held no private right of action exists under NYLL §191 for a frequency of pay violation.  But when the issue was presented to her again, in another case, *after Vega* was decided, she ruled that she was bound by *Vega*, even though she described the reasoning of *Vega* "tortured":

> "I will say, candidly, I find the reasoning in *Vega* a little bit – it's going to sound too harsh – a little tortured; but, nonetheless, it is an appellate decision on an issue of New York statutory law interpretation, and . . . I, as well as state courts, are bound to follow appellate court decisions unless I'm convinced – or unless there is substantial evidence or reason to believe that the Court of Appeals would find otherwise"

*Quintanilla v. Kabo Pharmaceuticals, Inc.,* Case No. 19-06752, Tr. p. 17 (E.D.N.Y. June 30, 2020) (denying motion to dismiss NYLL §191 frequency of pay claim).[48]  This Court is not obligated to

---

[48] Most Courts have just followed *Vega* without much analysis of the underlying claims. *See, e.g., Sorto v. Diversity Maint. Sys.*, 2020 U.S. Dist. LEXIS 216328, *3 (E.D.N.Y. Nov. 15, 2020) (noting that there is "case law supporting both sides of this issue," but deferring to *Vega*), Report and Recommendation adopted by 2020 U.S. Dist. LEXIS 242856 (E.D.N.Y. Dec. 28, 2020); *Rodrigue v. Lowe's Home Ctrs., LLC*, 2021 U.S Dist. LEXIS 162849, * 14 (E.D.N.Y. Aug. 27, 2021) (deferring to *Vega*); *Carrera v. DT Hospitality Grp.*, 2021 U.S. Dist. LEXIS 210894, * 27-29 (S.D.N.Y. Nov. 1, 2021) (same); *Caul v. Petco Animal Supplies, Inc.*, 2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021) (same).

follow this "tortured" reasoning, and based on *Konkur*, there is a convincing basis to believe the Court of Appeals would rule differently.

## POINT THREE

### If the Court Finds a Private Right of Action Exists, the Court Should Limit Damages to Lost Interest and Not Liquidated Damages in an Amount Equal to the Wages Already Paid

If the Court rejects all the arguments set forth herein, and finds a private right of action exists, either expressly or by implication, for violating the payroll processing frequency requirements, it should make clear that Plaintiffs' only remedy is lost interest on the untimely payments, not liquidated damages.  A plain reading of NYLL §198(1-a) dictates this result.  NYLL §198(1-a) states that unless the employer proves a good faith basis to believe that its underpayment of wages complied with the law, the court shall allow "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  Because there are no wages that have been "found to be due" (since all wages were paid), the only available remedy should be interest.  This would discourage employers to make late payments of wages because the longer they delay, the higher the interest payments, in addition to potential civil penalties imposed by the DOL, but would spare them the crushing liquidated damages Plaintiffs seek in the case at bar.

**CONCLUSION**

Thousands of employers in New York should not go bankrupt (or be threatened with same) because they paid employees every penny they are owed, but mistakenly, based on an archaic law dating to 1890, processed payroll bi-weekly instead of weekly.  That is not what the law requires. If the Legislature intended such a draconian remedy, it would have explicitly so provided, not buried it in vague text or relied on the court to find it by implication. "[L]egislative bodies do not hide elephants in mouseholes.'" *Cruz*, 22 N.Y.3d at 72 (internal quotations omitted).

<div style="margin-left: 3in">

Respectfully,

JACKSON LEWIS P.C.
*Attorneys for Defendant*
666 Third Avenue, 29th Floor
New York, NY  10017

By:     */s/ Adam S. Gross*
        Adam S. Gross

</div>

Dated: August 5, 2022
        New York, New York

## CERTIFICATE OF COMPLIANCE

Pursuant to Your Honor's Individual Practice Rule II(D), I hereby certify that the Memoranda of Law contains 12,463 words,[49] excluding the parts of the document that are exempted per Your Honor's rules. I further certify that Defendant's brief complies with all additional formatting rules.

Respectfully submitted,

JACKSON LEWIS P.C.
*Attorneys for Defendant*
666 Third Avenue, 29th Fl.
New York, NY  10017

By:      /s/ Adam S. Gross
Adam S. Gross

Dated: August 5, 2022
New York, New York

---

[49] On August 1, 2022, Defendant submitted a letter requesting an increase to Your Honor's memoranda of law word limit from 7,000 words to 12,5000 words.  The Court granted Defendant's request on August 3, 2022.  [Dkt. 12].