**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NINA KING and BRIANNA ALVAREZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>WHITE HOUSE BLACK MARKET, INC.,<br><br>                    Defendant. | Civil Action No. 1:22-cv-03385-JGK |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.      THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS ACTION ............................................................................................................ 1

      A.     11 Out Of 11 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed........................................................ 2

      B.     Courts Have Held That A Private Right Of Action Exists Long Before *Vega* ......................................................................................... 4

      C.     Failure To Make Timely Payment Of Wages Has Dire Consequences For The Low-Income Workers NYLL § 191 Was Designed To Protect........................................................................... 7

II.     THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191 ...................................................................... 8

      A.     Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages ........................................................... 8

      B.     Wages Become "Unpaid" If They Are Not Paid When Due ................................. 11

      C.     The New York Department Of Labor Has Explicitly Held That A Private Right Of Action Exists ............................................................. 13

III.    NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION ........................................................................................................ 14

IV.    PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES AND INTEREST................................................................................................... 16

V.     THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA* ............................. 19

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*,
16 N.Y.S.3d 898 (N.Y. Sup. Ct. N.Y. Cty. 2015) ........................................................ 4

*Beh v. Cmty. Care Companions Inc.*,
2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ............................................................. 4

*Belizaire v. Rav Investigative & Sec. Servs.*,
61 F. Supp. 3d 336 (S.D.N.Y. 2014) ....................................................................... 6

*Biggs v. Wilson*,
1 F.3d 1537 (9th Cir. 1993) .................................................................................. 12

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) ................................................................................. 16, 18, 19

*Caul v. Petco Animal Supplies, Inc.*,
2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021) ............................................. 3, 4, 14, 15

*Caul v. Petco Animal Supplies, Inc.*,
2021 WL 6805889 (E.D.N.Y. Dec. 21, 2021) ......................................................... 19

*Chowdhury v. Hamza Express Food Corp.*,
666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016) ............................................................. 17

*Cuzco v. Orion Builders, Inc.*,
2010 WL 2143662 (S.D.N.Y. May 26, 2010) ............................................................ 5

*Donovan v. Kaszycki & Sons Contractors, Inc.*,
959 F. Supp. 860 (S.D.N.Y. 1984) ........................................................................ 12

*Duverny v. Hercules Medical P.C.*,
2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ......................................................... 3, 4

*Elhassa v. Hallmark Aviation Servs., L.P.*,
2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) ............................................... 4, 14, 15

*Gaughan v. Rubenstein*,
261 F. Supp. 3d 390 (S.D.N.Y. 2017) ..................................................................... 6

*Gillett v. Zara USA, Inc.*,
2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ...................................................... 2, 16

*Grant v. Global Aircraft*,
 2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021) ............................ 4

*Konkur v. Utica Academy of Science Charter Sch.*,
 38 NY3d 38 (2022) ................................................................................................... 14, 15

*Lopez-Serrano v. Rockmore*,
 132 F. Supp. 3d 390 (E.D.N.Y. 2015) .......................................................................... 6

*Mabe v. Wal-Mart Assocs., Inc.*,
 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) .................................................... 3, 14, 15

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
 72 N.Y.2d 166 (1988) ................................................................................................. 13

*Myers v. Hertz Corp.*,
 624 F.3d 537 (2d Cir. 2010) ......................................................................................... 6

*Pashaian v. Eccelston Properties, Ltd.*,
 1993 WL 322835 (S.D.N.Y. Aug. 16, 1993) ............................................................... 6

*People v. Verti*,
 309 N.Y. 401 (1955) ............................................................................................... 8, 16

*Phillips v. Max Finkelstein, Inc.*,
 73 Misc. 3d 1 (N.Y. App. Term. 2021) ........................................................................ 3

*Poplawski v. Metroplex on the Atl., L.L.C.*,
 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ................................................................ 6

*Rana v. Islam*,
 887 F.3d 118 (2d Cir. 2018) ....................................................................................... 17

*Rodrigue v. Lowe's Home Centers, LLC*,
 2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ............................................................. 2

*Rojas v. Hi-tech Metals, Inc.*,
 2019 WL 4570161 (Queens Cnty. Sept. 11, 2019) ...................................................... 3

*Scott v. Whole Foods Market Group, Inc.*,
 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ......................................................... 3, 15

*Sorto v. Diversified Maintenance Systems, LLC*,
 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ....................................................... 3, 15

*Sorto v. Diversified Maintenance Systems, LLC*,
 2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020) ........................................................... 15

*Urtubia v. B.A. Victory Corp.*,
  857 F. Supp. 2d 476 (S.D.N.Y. 2012) ..................................................................... 5

*V.S. v. Muhammad*,
  595 F.3d 426 (2d Cir. 2010) ..................................................................... 1, 2, 19

*Vega v. CM & Assoc. Const. Mgmt., LLC*,
  175 A.D.3d 1144 (N.Y. App. Div. 1st Dep't 2019) ........................................ passim

*Wiggins v. Hain Pure Protein Corp.*,
  829 F. Supp. 2d 231 (S.D.N.Y. 2011) ..................................................................... 5

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*,
  2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016) ......................................................... 17

## STATUTES

29 U.S.C. § 216(b) ................................................................................... 16, 18

New York Labor Law ("NYLL") § 191 ................................................................ passim

New York Labor Law ("NYLL") § 198 ................................................................ passim

## INTRODUCTION

Defendant's motion to dismiss ("MTD") makes a single argument: that there is no private right of action for violation of the frequency-of-payment rules set forth under the New York Labor Law ("NYLL") § 191. Defendant needed a double-length brief to make this argument because it has a tall mountain to climb. In *Vega v. CM & Assoc. Const. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019), New York's appellate division for the First Department issued a unanimous decision which held that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Vega* is the State's highest court to address this issue to date. Since the issuance of the *Vega* decision, all 11 courts to consider it (including nine federal courts in this Circuit) have followed its holding. Zero have declined to do so.

Defendant must do far more than convince the Court that Defendant is correct in order to win this motion. The Second Circuit has explained that federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). Defendant comes nowhere close to clearing this significant hurdle.

The numbers do not lie. There is a reason why the arguments Defendant is making were already rejected by every other court to consider them. It is because they are wrong.

## ARGUMENT

## I.    THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS ACTION

The First Department has explained that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Vega*, 175 A.D.3d at 1146. And "even if Labor Law § 198 does not expressly authorize a private action for violation of the

requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, in *Vega*, the First Department found two alternative bases for its decision that a private right of action exists for NYLL § 191 claims.

The *Vega* decision constitutes guidance from the highest state court to address this issue to date. Accordingly, because there is no case law from the Court of Appeals on this issue, this Court is bound by the holding of the New York's First Department in *Vega* unless there is "persuasive evidence" that the Court of Appeals would hold otherwise. *See V.S. v. Muhammad*, 595 F.3d at 432. But no such "persuasive evidence" exists. The *Vega* decision was unanimously issued by all five judges sitting on the First Department's panel without any dissent. *See Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *11 (S.D.N.Y. Aug. 10, 2022) ("Because Defendants offer no 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in Vega, the Court is 'bound to apply the law as interpreted by' the intermediate appellate court.") (internal citations omitted).

A.   **11 Out Of 11 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed**

Since *Vega*, at least 11 courts have adopted its holding, and zero courts to consider *Vega* have disagreed with its ruling. Defendant offers no basis why this Court should be the first.

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021); *see also Zara*, 2022 WL 3285275, at *12 ("Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of

2

wages."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *2 (E.D.N.Y. Sep. 27,

2021) ("Section 191 permits a manual worker to bring a civil action for delayed payment of

wages—even if the wages have subsequently been paid."); *Quintanilla v. Kabco Pharm., Inc., et

al.*, Case No. 2:19-cv-06752-PKC, ECF No. 18 (E.D.N.Y.) (June 30, 2020 Minute Entry)

(rejecting argument that plaintiff did not have private right of action to pursue Section 191 claim

"in light of the *Vega* decision"); *Rojas v. Hi-tech Metals, Inc.*, 2019 WL 4570161, at *4 (Queens

Cnty. Sept. 11, 2019) ("In light of the sentiments set forth in *Gottlieb* by the Court of Appeals

and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198

(1-a) claims is denied."); *Scott v. Whole Foods Market Group, Inc.*, 2019 WL 1559424, at *4

(E.D.N.Y. Apr. 9, 2019) ("The discretionary nature of the Commissioner's authority coupled

with the references to employee actions in § 198 compels the conclusion that a private action

under § 191 is consistent with the legislative scheme."); *Mabe v. Wal-Mart Assocs., Inc.*, 2022

WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022) ("[T]he Court is not convinced that the New York

Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court

finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action.");

*Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020)

(following *Vega*, and denying defendant's motion for summary judgment as to plaintiff's Section

191 claim, noting that "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a)

survives even if the employer pays the employee's base wages prior to the commencement of a

civil action"); *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108, at *3

(E.D.N.Y. Dec. 28, 2020) ("Accordingly, the Defendant's objections are OVERRULED …

permitting a private right of action is appropriate.") (internal quotation omitted); *Phillips v. Max

Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (agreeing with *Vega* "that a private

right of action exists to enforce the rights established under section 198"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due, *see Vega v. CM & Assoc. Constr. Mgt., LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), and as Judge Kovner concluded just months ago, [s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *Caul*, 2021 WL 4407856, at *3."); *Beh v. Cmty. Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (citing *Sorto* and *Duverny*, and holding [f]or these reasons, the Court concludes that there is a private right of action for violations of NYLL § 191.").

As noted in Defendant's brief, there was a New York Supreme Court that issued a decision holding that no private right of action exists. *See Grant v. Global Aircraft*, 2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021). But it is important to note that the *Grant* court did not consider *Vega*. This is apparent not only from the fact that the decision did not cite to or address it, but because the *Vega* decision was legally binding on that court. *Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*, 16 N.Y.S.3d 898, 916 (N.Y. Sup. Ct. N.Y. Cty. 2015) ("State trial courts must follow a higher court's existing precedent even though they may disagree."). The decision is now on appeal.

### B.   Courts Have Held That A Private Right Of Action Exists Long Before *Vega*

Defendant contends that "for nearly 130 years [prior to *Vega*] no one brought a private lawsuit for violations of the statute because it was understood that the law did not provide that

remedy." MTD at 2. That is just plain wrong. District courts within the Second Circuit have long held that a private right of action exists under NYLL § 191. For example, in *Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231 (S.D.N.Y. 2011), Judge Cote recognized that "[p]ursuant to § 191, certain kinds of employees can bring a claim for an employer's failure to pay their wages on a certain schedule." *Id.* at 241. In another factually similar case where an employer allegedly failed to comply with NYLL § 191, the plaintiffs moved for summary judgment, and Judge Wood held:

> In this case, Defendants did not pay wages as often as the law requires, and did not pay wages as early as the law requires. Defendants paid wages every two weeks (rather than weekly) and paid these wages no earlier than two weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs [] are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191.

*Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010).

In *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012), the plaintiffs brought claims on behalf of manual workers, claiming violations of both the timely pay provisions and frequency of pay provisions under NYLL § 191. *Id.* at 481. In denying the defendant's motion to dismiss, and permitting the employees' claims under NYLL § 191 to proceed, Judge Swain observed that the New York Labor Law does not preclude employees from bringing a private action. *Id.* at 482.

In another similar case where a defendant challenged whether the Plaintiff had asserted a valid cause of action under NYLL § 191, Judge Englemayer adopted the report and recommendation of Magistrate Judge Parker, holding as follows:

> Here, Plaintiff alleges that she was not paid in a timely manner and that [the employer] withheld her paychecks on various occasions. … Defendants' delay in paying Plaintiff her wages, either by

> failing to issue paychecks or by forward-dating her paychecks,
> violates the prompt payment requirements of the FLSA and the
> NYLL.

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 426 (S.D.N.Y. 2017).

Judge Spatt of the Eastern District also addressed whether a violation of NYLL § 191 gives right to a private right of action in *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390 (E.D.N.Y. 2015).  There, the plaintiff brought suit against her former employer under NYLL § 191 "based on Rockmore's failure to timely pay her wages for work performed during the Relevant Time Period."  *Id.* at 403-04.  Judge Spatt noted that "[a]n employer's failure to timely pay its employees for their work" entitles the employees to a remedy under NYLL § 198.  *Id.* Many other courts have reached the same conclusion.  *See*, *e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010) (holding NYLL § 191 "guarantees the timely payment of wages by employers"); *Pashaian v. Eccelston Properties, Ltd.*, 1993 WL 322835, at *2 (S.D.N.Y. Aug. 16, 1993) (the purpose of NYLL § 191 and its damages provision (NYLL § 198) is to ensure "timely payment" of wages); *Ortiz v. Arthur T. Mott Real Estate, L.L.C.*, 2:15-cv-03940, ECF No. 73 (Order re: Motion to Dismiss) (E.D.N.Y. Sept. 15, 2016) (denying defendant's motion to dismiss plaintiffs' NYLL § 191 claim and stating that NYLL § 191 "guarantees the timely payment of wages by employers"); *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (allegation that bounced paychecks resulted in delayed payment of wages was sufficient to set forth a cause of action for "late payments" under New York Labor Law § 191); *Poplawski v. Metroplex on the Atl., L.L.C.*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012) (granting class certification of NYLL § 191 claims where it was alleged that there was a "failure to pay wages in a timely manner").

Defendant's attempt to portray *Vega* as an anomaly that came out of nowhere is not based

in reality.  The truth is that there was a split in authority on this issue, which *Vega* resolved.

Contrary to Defendant's hysterics, nothing crazy has resulted since *Vega* clarified this issue.

Defendant insists that "[t]housands of employers [will] go bankrupt" as a result, MTD at 37, but

Defendant fails to identify even a single such bankruptcy in the years that have ensued since

*Vega.*  The only legitimate result is that *Vega*'s guidance has now led to more widespread

compliance with the law.

### C.     Failure To Make Timely Payment Of Wages Has Dire Consequences For The Low-Income Workers NYLL § 191 Was Designed To Protect

Defendant's briefing calls the provisions of NYLL § 191 "archaic" and the penalties for

violating it "draconian," while whining about the impact its enforcement has on employers.

MTD at 37.  But Defendant never pauses to acknowledge the impact its violations of this law

have on its low-wage employees.  This is coming from a perspective of considerable privilege:

Defendant's counsel and its management thankfully may not have experience in what it is like

living paycheck to paycheck.  But struggling to make ends meet is a reality for most Americans

and a lack of timely access to wages has given rise to a massive payday loan industry in the

United States.  According to the Federal Reserve, "[f]orty-six percent of adults say they either

could not cover an emergency expense costing $400, or would cover it by selling something or

borrowing money."[1]  According to Defendant, its admitted wage violation is a harmless error,

but its low-wage manual workers would certainly beg to differ.  Prompt access to their wages

could mean the ability to avoid getting their telephones, electricity, or utilities shut off.  Or to

---

[1] Kopel Decl., Ex. 1, Report on the Economic Wellbeing of U.S. Households in 2015, Board of

Governors of the Federal Reserve System, *available at* https://www.federalreserve.gov/2015-report-economic-well-being-us-households-201605.pdf.

avoid going into debt.  Or to be able to buy their child a present for their birthday.  As the Court

of Appeals has explained, this law was "intended for the protection of those who are dependent

upon their wages for sustenance."  *People v. Verti*, 309 N.Y. 401, 405 (1955).  These are real

people that suffer real-life consequences from wage violations that Defendant callously pretends

are harmless "errors."

 But even Defendant would have a hard time disputing this: without a private right of

action, this lawsuit would never have been filed, and Defendant would simply continue violating

its employees' statutory rights.  And if this motion is granted, it will likely continue to do just

that.  (Subject to, of course, the nearly-meaningless threat of being fined $1,000 from the

Department of Labor).

## II. THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191

 *Vega*'s holding that "Labor Law § 198 (1-a) expressly provides a private right of action

for a violation of Labor Law § 191," 175 A.D.3d at 1146, is well-supported by legislative

history, guidance from the New York Department of Labor, case law interpreting analogous

provisions of the Fair Labor Standard Act, and common sense.

### A. Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages

 NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in

Article Six.  In *Vega*, the First Department noted the obvious:  late payment of wages is a type of

wage claim.  *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides

remedies only in the event of nonpayment or partial payment of wages (but not in the event of

late payment of wages, the plain language of the statute indicates that individuals may bring suit

for any 'wage claim' against an employer")).  The legislative comments to the Labor Law show

that *Vega* was right:  claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and enacting a new version which provides the basis for the current law in place today.  A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization."  Kopel Decl., Ex. 2, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).[2]  In referring to laws governing the frequency of payments to manual workers as "wage payment provisions," the language of the memorandum cuts against Defendant's argument that claims under these provisions are "non-wage" claims. *See* MTD § II.A.

In 1967, the Legislature enacted Section 198, allowing for a private cause of action with a liquidated damages provision.  According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16).[3]  Again, there is no reason to believe that a statute meant to cover "wage payment laws" was intended to be construed in a manner that it should not cover the "wage payment provisions" from one year earlier.

To the contrary, the memorandum makes clear that the purpose of the liquidated damages

---

[2] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1966-CH-0548.pdf

[3] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1967-CH-0310.pdf

provision of the bill as to "compensate the employee for the loss of the use of the money to which he was entitled."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 5 of 16).[4]  That is the *precise* injury experienced by workers receiving their wages late.  And in a section titled "arguments in support of the bill," the memorandum explains that bill sought to remedy a scenario where employers "will have had the free use of their employees' money for some time and their employees will have been seriously inconvenienced.  The calculation of interest on the money due would be difficult as it would have accrued in small amounts week by week.  This bill follows the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages."  This shows a legislative intent for the liquidated damages provision to be used as a replacement for small amounts of weekly interest lost.

The 1967 Memorandum makes clear that the Legislature considered and rejected Defendant's argument that the law would subject employers to "draconian damages."  MTD at 3. It notes that "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 5 of 16).  However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees or proper payment of wages under the law and would thus be a deterrent against abuses and violations."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 13 of 16).  This extra "safeguard" was sorely needed. Defendant's complaints that "*Vega* opened the floodgates" leading to "more than 150 lawsuits" only go to show just how widespread noncompliance with the law was.  *See* MTD at 2.

---

[4] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1967-CH-0310.pdf

There is no need to analyze legislative history from hundreds of years ago.  The Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 5 of 16).  Against this backdrop, Defendant's insistence that this provision was not intended to cover the rules ensuring that workers would receive prompt access to their money is absurd.

### B.      Wages Become "Unpaid" If They Are Not Paid When Due

Defendant claims that an "error"[5] regarding the frequency in which payroll is processed would not be understood to be a 'wage claim,' or an 'underpayment' of wages."  MTD at 7. That is wrong.  There is no meaningful difference between late payment and nonpayment – at the end of the first week of each biweekly pay period, Defendant failed to pay Plaintiffs' wages. That is nonpayment.  The "underpayment" and "amount due" at that time was the entire week's pay.  The First Department explained this:  "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."  *Vega*, 175 A.D.3d at 1146.  Any holding otherwise would allow an employer to "cure a violation and evade the statute by paying the wages that are due before the commencement of an action."  *Id.* at 1145.

As the Ninth Circuit explained when rejecting this same argument in the FLSA context, "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either… Any kind of

---

[5] The term "error" does not appear in the operative Complaint.  Its use in Defendant's motion is baseless and improper.

sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'" *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993).

Defendant argues that underpayment becomes nonpayment if an employer failed to pay "on their agreed regularly scheduled payday" whether it "was daily, weekly, bi-weekly, semi-monthly, or monthly." MTD at 8. That makes no sense. Defendant's argument implicitly acknowledges the impossibility of distinguishing between late payment and nonpayment by agreeing that nonpayment occurs immediately after funds come due. All it does is switch the payment deadline to be where Defendant prefers it to be.

Moreover, any purportedly "agreed" pay date is a legal nullity as the parties were not empowered to enter into such an agreement to begin with. It is no different than saying that an employee "agreed" to accept less than minimum wage. The entire purpose of enacting Labor Laws is to ensure minimum standards for workers with unequal bargaining power. Here, the Legislature clearly believed that a law was required for manual workers to be paid on a weekly basis in order to protect this class of persons. Why then, would an "underpayment," as the term is used in NYLL § 198, only occur after an illusory "agreed" date rather than the date set by the Legislature itself (and when the wage is actually, legally due)? It makes no sense.

Defendant might argue that the "agreed" date is appropriate because its employees could expect to be paid by then. But that is a slippery slope. An "assurance" from an employer that it will eventually pay obviously cannot form an exception to the language of the statute. *See Donovan v. Kaszycki & Sons Contractors, Inc.*, 959 F. Supp. 860, 869 (S.D.N.Y. 1984) ("The fact that Defendants may have intended to pay the employees at some future date, or that some employees might have acquiesced, albeit grudgingly, to deferred payment, has no bearing on the

fact that the statute was violated.").  That would just allow employers to escape liability by promises to eventually pay.  That cannot be sufficient.

### C.      The New York Department Of Labor Has Explicitly Held That A Private Right Of Action Exists

Defendant argues that "DOL guidance … conclusively establishes that frequency of pay claims are non-wage claims" without a private right of action.  MTD at 10.  That is wrong.

The New York Department of Labor ("DOL") has held that a private right of action exists.  Indeed, in an October 28, 2010 opinion letter, the DOL reiterated that NYLL § 191 is enforceable by a private right of action.  *See* Kopel Decl., Ex. 4, RO-10-0003.[6]  In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that while an employer could require an employee to sign off on the time sheet, the employee's signature "neither relieves the employer of its obligations under []Section [191], nor does it prevent an employee from filing a complaint with this Department or *bringing an action for a violation of [NYLL § 191.]*"  *Id.* at pp. 4 (emphasis added).  Thus, it is the view of New York's DOL that employees are empowered to bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988).  Therefore, the DOL's October 28, 2010

---

[6] *Available at*

https://statistics.labor.ny.gov/legal/counsel/pdf/Direct%20Deposit%20of%20Wages/Direct%20Deposit,%20Meal%20Breaks%20and%20Child%20Labor%20-%20RO-10-0003.pdf.

opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

Defendant argues that the DOL does not believe that a private right of action exists because the DOL website and the DOL's "Complaint Form" "identif[y] frequency of pay claims as 'non-wage complaint[s].'"  MTD at 10.  That is a silly argument.  The organization of a claim form is neither an opinion nor interpretation.  The DOL has a means of expressing legal opinions: in opinion letters.  And when it addressed this issue in an opinion letter, it stated that a private right of action exists.

## III.   NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION

Defendant further argues that finding an implied private right of action "would conflict with *Konkur v. Utica Academy of Science Charter Sch.*, 38 NY3d 38 (2022)" and its precedent. MTD at 25.  But Defendant neglects to mention that this exact argument—along with its reliance on *Konkur*—has been squarely rejected in the NYLL § 191 context by *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) and *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022).

Specifically, the Court in *Mabe* held as follows:

> To the extent Defendant contends that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and that there is no private right of action in § 198 for a mere untimely payment of wages, *Vega* addressed those concerns. The *Vega* Court found that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at 1146 (citation omitted). "And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines," *Caul*, 2021 WL 4407856, at *3 (citing Vega, 175 A.D.3d at 1147), which the *Vega* Court found to be "consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit

14

against an employer for violations of the labor laws, even if the
Commissioner chooses not to do so." *Vega*, 175 A.D.3d at 1147.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question in

*Konkur* had to do with the implication of a private right of action [under Labor Law § 198–b,

which prohibits wage kickbacks]. *Vega* rested on a different ground.'")) (quoting *Vega*, 107

N.Y.S.3d at 288).

Accordingly, Defendant's argument is without merit and should be rejected.  *See Sorto*,

2020 WL 8413553, at *2, *report and recommendation adopted*, 2020 WL 7693108 (E.D.N.Y.

Dec. 28, 2020) ("Moreover, as the courts in *Vega* and *Scott* recognized, this conclusion is

consistent with an implied private of action under section 191, even if the statute may not fairly

be read to expressly provide one."); *Caul*, 2021 WL 4407856, at *3 ("Defendants contend that

the statute already provides an administrative mechanism to enforce Section 191 violations, the

legislative history reflects the administrative nature of the Section 191 scheme, and the purpose

of Section 191 is 'to ensure that employers make payroll payments at all.' But *Vega* addressed

those general concerns, finding that the purposes of Sections 191 and 198 are to protect

employees who are 'dependent upon their wages for sustenance' and deter labor law violations.

And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an

individual sue even where the administrator declines.") (internal citations omitted).

Finally, Defendant argues that recognizing an implied right of action violates separation

of powers.  That is nonsense.  This argument would mean that an implied right of action could

never be recognized under New York law, which is clearly untrue.  Moreover, recognition of an

implied right would not preclude administrative action.  To the contrary, "Section 198 lets an

individual sue even where the administrator declines[.]"  *Caul*, 2021 WL 4407856, at *3 (citing

*Vega*, 175 A.D.3d at 1147).

15

**IV.      PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES AND
           INTEREST**

Defendant argues that "a plain reading of NYLL § 198(1-a)" exempts it from liability for

liquidated damages.  MTD at 36.  Based on this, Defendant argues that the Court cannot assess

"liquidated damages equal to one hundred percent of the amount of the wages found to be due"

because "there are no wages 'found to be due.'"  NYLL § 198(1-a); *id.* at 16.  Defendant is

wrong.

This exact argument was analyzed and rejected by the First Department in *Vega*. There,

the court held that:

> We reject defendant's implicit attempt to read into section 198 (1-
> a) an ability to cure a violation and evade the statute by paying the
> wages that are due before the commencement of an action. The
> employer may assert an affirmative defense of payment if there are
> no wages for the "employee to recover" (Labor Law § 198 [1-a]).
> However, payment does not eviscerate the employee's statutory
> remedies.

175 A.D.3d at 1145.  The First Department based this on a comparison with the Fair Labor

Standards Act's ("FLSA") liquidated damages provision. The FLSA imposes liquidated damages

for violations in an amount equal to "the amount of … unpaid minimum wages, or their unpaid

overtime compensation, as the case may be." 29 U.S.C. § 216(b).  Based on this, the U.S.

Supreme Court held that "regardless of whether an employee has been paid wages owed before

the commencement of the action, the statute provides a liquidated damages remedy for the

'failure to pay the statutory minimum on time,' in order to provide 'compensation for the

retention of a workman's pay which might result in damages too obscure and difficult of proof

for estimate other than by liquidated damages.'"  *Vega*, 175 A.D.3d at 1146 (quoting *Brooklyn

Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).  The First Department applied the same

reasoning to its holding regarding the NYLL's liquidated damages provision. *Id.*; *see also Zara*,

2022 WL 3285275, at *11 (agreeing with *Vega* that liquidated damages are available for violation of § 191, even if late wages were eventually paid).

The *Vega* decision also bases its reasoning on the NYLL's "legislative history" which "reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled.' The employee loses the use of money whether he or she is never paid, partially paid, or paid late." *Vega*, 175 A.D.3d at 146 n.2 (quoting Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis. Ann. at 271).

The *Vega* decision is well-reasoned. The Second Circuit has explained that NYLL § 198 (1-a), although not identical to the FLSA liquidated damages provision, has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). This lack of "meaningful differences" was intentional. "The New York State legislature has now twice amended its liquidated damages statute to conform as closely as possible to the FLSA's liquidated damages provision." *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. Dec. 7, 2016). These amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute." *Xochimitl v. Pita Grill of Hell's Kitchen*, *Inc.*, 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016).

Here, Defendant is arguing that the New York Legislature's use of the words "wages found to be due" in the NYLL statute suggests that payment of untimely compensation before commencement of an action provides employers with a safe harbor against the imposition of liquidated damages. But this argument would theoretically apply with even greater force to the

language used by the FLSA which calculates liquidated damages as the "amount of unpaid []

wages." *Compare* NYLL § 198 (1-a), *with* 29 U.S.C. § 216(b).  If Defendant's argument were

correct, Congress's use of the word "unpaid" would indicate that the balance of unpaid wages

would need to remain outstanding at the commencement of a suit in order for courts to impose

liquidated damages for violations of the FLSA.  That is not the case.

Instead, the Supreme Court expressly rejected this argument in *Brooklyn Savings Bank*.

There, the Court noted that (like the NYLL provisions), "[n]either the statutory language, the

legislative reports not the debates indicates that the question at issue was specifically considered

and resolved by Congress.  In the absence of evidence of specific Congressional intent, it

becomes necessary to resort to a broader consideration of the legislative policy behind this

provision as evidenced by its legislative history and the provisions in the structure of the Act."

324 U.S. at 705-06.

Here too, just as the First Department did in *Vega*, New York's Court of Appeals would

be required to turn to the legislative policy behind NYLL § 198 (1-a).  And in doing so, it is clear

the Court of Appeals would find that imposition of liquidated damages is appropriate, even if the

late payments were made before the action was filed.

Consider the implications of Defendant's argument.  Manual workers that are paid

biweekly instead of weekly would be required to refuse their biweekly payments in order to

avoid waiving their rights to collect liquidated damages under the statute.  This would contradict

the entire "object of the law[,] which is to compel prompt payment of daily wages to the small

wage earner." *People v. Vetri*, 309 N.Y. 401, 407 (1955) (citing former NYLL § 196).

Employers violating the statute would get off scot-free and manual workers would have no

recourse whatsoever.  "Such an interpretation would nullify the effectiveness of the Act."

*Brooklyn Sav. Bank*, 324 U.S. at 712.

 Against this backdrop, there is no "persuasive evidence that the state's highest court

would reach a different conclusion" than the "state's intermediate appellate court[]" did in the

*Vega* decision.  Defendant's argument must therefore be rejected.

**V.    THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S
       MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA***

The entirety of Defendant's brief is devoted to trying to convince the Court that *Vega* was

wrongly decided.  But whether the Court agrees with *Vega* is simply not determinative.  Nor is it

determinative whether the Court thinks that the New York Court of Appeals would agree with

*Vega*.  Rather, the standard this Court must use for this motion is there is "persuasive evidence

that the state's highest court would reach a different conclusion" from *Vega*.  *V.S. v. Muhammad*,

595 F.3d at 432.  That is an extremely high bar that Defendant's arguments do not even approach

clearing.  Indeed, as Defendant's brief correctly noted, Judge Chen even denied a motion to

dismiss a similar claim after previously holding that NYLL § 191 did not have a private right of

action.  Kopel Decl., Ex. 5, *Quintanilla v. Kabo Pharms., Inc.*, Case No. 19-cv-06752, Hrg. Tr.

(E.D.N.Y. June 30, 2020).  Even though Judge Chen found the reasoning of *Vega* to be "a little

tortured," she correctly recognized that her Court was "bound to follow appellate court decisions

unless … there is substantial evidence or reason to believe that the Court of Appeals would find

otherwise."  *Id.* at pp. 17.  As every court to examine the *Vega* decision has recognized, the

requisite "persuasive evidence" to part from its holding simply does not exist.

This is not even a close call.  In *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 6805889

(E.D.N.Y. Dec. 21, 2021), the defendant sought certification of the court's denial of its motion to

dismiss for interlocutory appeal.  But Judge Kovner denied the motion, stating bluntly that:

> There is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed waged payments under the NYLL. … Defendants' motion for certification fails to cite any relevant or persuasive conflicting opinions that raise genuine doubt as to the Court's obligation to follow *Vega*. And defendants have not identified persuasive evidence that the New York Court of Appeals would reach a different conclusion than *Vega*.

*Id.* at *1. The same is true here.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

Dated: August 19, 2022                     Respectfully submitted,

By:   */s/ Yitzchak Kopel*
      Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
      aleslie@bursor.com

## CERTIFICATION OF COMPLIANCE

I, Yitzchak Kopel, in accordance with Rule II.D of Your Honor's Individual Practices, hereby certify that Plaintiffs' brief in opposition to Defendant's motion to dismiss is 6,288 words (excluding Table of Contents and Table of Authorities).  I also hereby certify that this brief complies with Your Honor's formatting rules.

_____

Yitzchak Kopel