**EXHIBIT 4**



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen Gardner, *Commissioner*

October 28, 2010



Re:    Request for Opinion
       Direct Deposit
       Meal Breaks
       Child Labor
       RO-10-0003

Dear █████████,

     I have been asked to respond to your letters dated December 1, 2009, and December 31, 2009, in which you request an opinion regarding three areas of ███████ ████████ intended employment policies.  Your letter poses questions relating to the direct deposit of wages, meal periods, and child labor.  The specific questions posed under each of these areas are quoted [italics] and addressed individually below.

**Direct Deposit**

   1. *As a multistate employer, can* ████ *"mandate" direct deposit for all employees in your state?*

     Section 192(1) of the Labor Law provides that "[n]o employer shall without the advance written consent of any employee directly pay or deposit the net wage or salary of such employee in a bank or other financial institution."  Accordingly, no employee, except those exempted under Section 192(2), which exempts, in relevant part to this inquiry, persons employed in a bona fide professional, administrative, or executive capacity making in excess of nine hundred dollars per week, may be required to accept payment through direct pay or deposit into a bank or other financial institution.  For consent to be valid, it must not be a condition of employment, since to do so would undermine the voluntariness and lower the requirement for consent to the functional equivalent of mere notification.  Consent must be sought and provided after the inception of the employment relationship.  Consent provided

prior to the inception of the employment relationship is ineffective since Section 192(1) requires that the consent be from an "employee," thereby mandating that it be given after the inception of the employment relationship. Such consent may be revoked by employees at any time.

> 2. *For purposes of mandatory direct deposit is there a distinction between existing employees and new hires? For instance is it permissible to require new hires to accept direct deposit and not current employees that have not elected to have it?*

As indicated in our previous response, use of direct deposit is allowed under law only upon voluntary consent of the employee. Therefore, mandatory use of direct deposit is not permitted for any employee, whether a new hire or not.

> 3. *If we cannot classify it as a condition for employment for existing employees, can we classify it as a condition of employment for new hires, so that all new employees have to sign up?*

See the response to questions 1 and 2, above.

> 4. *If it can be a condition of employment, what happens if an employee signs up for Direct Deposit to get the job and then cancels it/closes account. Can their employment be terminated?*

Not only may direct deposit of pay not be mandated as a condition of employment, employers are prohibited by Section 215 of the Labor Law from taking retaliatory action against employees for asserting their rights under the Labor Law.

**Meal Breaks**

> 1. *Can employees by agreement in a signed waiver or contract waive their meal period rights provided by law and designate how each would like to handle their meal breaks? We have enclosed a sample waiver that presents two options; working through their lunch breaks, or punching out for a full thirty minute meal break.*

Section 162 of the Labor Law covers employee meal periods. Labor Law Section 162(1) requires a person employed in or in connection with a factory to have at least a sixty-minute noon day meal. Section 162(2) requires other persons employed in an establishment or occupation under the provisions of the Labor Law to have at least a thirty-minute noon day meal. The Department of Labor interprets the term "noon day meal" as one that is taken during the period extending from 11:00 a.m. to 2:00 p.m., meaning that the hours of employment must extend through the noon day meal period. An employee must be provided a meal period in all situations where he or she works in excess of six hours, and those hours encompass the period between 11:00 a.m. and 2:00 p.m. Section 162(3) requires that every person employed for a period starting before 11:00 a.m. and continuing later than 7:00 p.m.

must be allowed an additional meal period of at least twenty minutes between 5:00 p.m. and 7:00 p.m.  Section 162(4) extends non-factory workers' meal period to forty-five minutes, and factory workers to sixty-minutes, when the person works between the hours of 1:00 p.m. and 6:00 a.m.

In <u>American Broadcasting Companies, Inc. v. Roberts</u>, 61 N.Y.2d 244 (1984), the New York State Court of Appeals, New York's highest court, held that certain provisions of the Labor Law could be waived by employees or their authorized representatives provided that the waiver or modification of the statutory intent does not contravene the legislative purpose of the statute.  The case involved individuals employed in producing and reporting network news who had to miss scheduled meal breaks due to the timing of the evening news broadcast.  In exchange for a waiver of their evening meal breaks provided in Section 162 of the Labor Law, the employer negotiated, through the collective bargaining agreement, to give the workers extra breaks and an additional extended meal period during other times of the day.  The Court held that where there was no express legislative indication that waiver was precluded, "a bona fide agreement by which the employee received a desired benefit in return for the waiver, the complete absence of duress, coercion or bad faith and the open and knowing nature of the waiver's execution" may effectively waive or modify the benefit provided by the statute to the employees.

As you have not set forth any grounds for a belief that such criteria have been met, it is the position of the Department of Labor that a waiver of the meal period under the circumstances you describe would not be lawful, and that ▮ is required to comply, in full, with the requirements of Section 162 as contained therein and described above.  Additionally, your proposal to utilize a form[1] to accomplish such a waiver does not appear to meet these requirements since it likely will not be the result of good faith negotiations for which employees receive significant benefits.  A waiver form provided by an employer does not, in the opinion of this Department, meet the requirements for a valid waiver of Section 162.

  2. *Can we require employees sign off on their weekly timesheets?, so that they are agreeing with their pay for that week and can request corrections prior to payroll being processed and distributed.  This can be done electronically or on a printout of their timesheet.*

Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees.  For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned (Labor Law §191(1)(a)(i)), while clerical and other workers must be paid in accordance with the agreed terms of employment, but not less than semi-monthly, on regular pay days designated by the employer (Labor Law §191(1)(d).)  While an employer can require an employee to sign off on their weekly timesheet,

---

[1] It is worth noting that the sample waiver forms are incorrect in their description of New York's meal period requirements.

the employee's signature on a weekly timesheet neither relieves the employer of its obligations under this Section, or any other under the Labor Law, nor does it prevent an employee from filing a complaint with this Department or bringing an action for a violation of that or any other section of the Labor Law. However, in direct response to your question, please be advised that nothing in the Labor Law restricts an employer's ability to obtain an employee's acknowledgement of a correction in a time sheet prior to payroll being processed and distributed, and such acknowledgement may be done electronically or on a printout of their timesheet.

**Child Labor**

1. [In regard to the description of your policies regarding underage workers] *Are there any exceptions/clarifications to the above? In other words, are the above listed practices lawful in your jurisdiction?*

Your letter contains a general discussion of your policies regarding the employment of children under the age of 18. Insofar as your letter does not provide a detailed description of NBE's policies on the employment of minors, no determination can be made as to the permissibility of such policies under the New York State Labor Law. However, based upon the limited information contained in your letter regarding the employment of minors, namely that working papers are maintained, that child labor laws differ from state to state, and that the director of human resources is required to approve all workers prior to hiring (a strictly internal administrative requirement particular to your company), nothing described in your letter appears to be in violation of the New York State Labor Law.

2. *Can 14-15 year olds work in a bowling center in the two capacities mentioned (Birthday and After School Attendants)?*

The answer to this question will depend upon whether the hours the children are working exceed the maximum allowed under law and whether the children are engaged in occupations permitted under law.

With regard to permitted occupations, please be advised that the New York Labor Law prohibits minors from working in some jobs for safety and health reasons. Examples of prohibited occupations include construction work, the operation of power-driven tools, the manufacture of brick and tile, logging, mining, and the manufacture of explosives. The positions described in your letter do not appear to fit in any of the prohibited occupations and are, therefore, permissible for children to work in.

With regard to the maximum number of hours a child may be permitted to work, the child's age and whether school is in session are the key factors. When school is in session, students aged 14 and 15 may work three hours on school days, and eight hours on other days, up to eighteen hours per week, and six days a week. Such work must be performed between 7:00 a.m. and 7:00 p.m. When school is not in session, students aged fourteen and fifteen may

- 4 -

work up to eight hours a day, up to forty hours a week, and six days a week.  From June 21 to Labor Day, students aged fourteen and fifteen may work between 7:00 a.m. and 9:00 p.m.  Your letter states that birthday party attendants are scheduled on weekends from 11:00 a.m. to 5:00 p.m., and occasionally after school on weekdays from 3:00 p.m. to 6:00 p.m.  The afterschool attendants are scheduled from about 3:00 p.m. to 6:00 p.m.  Assuming the child workers do not exceed the maximum hours or days restrictions described above, it appears that the practice described in your letter is permissible under the New York Labor Law.

3.  *Are the laws for underage family members of the owners the same?*

While some exceptions to the child labor laws cover children working for their parents or guardians on a farm or other outdoor work not associated with or for any trade, business, or service, these exceptions are inapplicable to the operation of a bowling alley.  Accordingly, the laws for underage family members of the owners are the same as those described above.

This opinion is based exclusively on the facts and circumstances described in your letter December 1, 2009, and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented.  Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein.  This opinion cannot be used in connection with any pending private litigation concerning the issue addressed herein.  If you have any further questions, please do not hesitate to contact me.

Very truly yours,
Maria L. Colavito, Counsel

By:   *Michael Paglialonga*
        Michael Paglialonga
        Assistant Attorney I

CC:   Carmine Ruberto